## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANNIE LAURIE GAYLOR; DAN BARKER; IAN GAYLOR, Personal Representative of the estate of ANNE NICOL GAYLOR; AND FREEDOM FROM RELIGION FOUNDATION, INC.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>JACOB LEW, Secretary of the United States Department of Treasury; JOHN KOSKINEN, Commissioner of the Internal Revenue Service; and the UNITED STATES OF AMERICA,<br><br>    *Defendants*. | Case No. 16-CV-215 |

### BRIEF IN REPLY TO DEFENDANTS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE

The Government does not dispute that Proposed Intervenors have a "direct, significant, and legally protectable interest" at issue in this case. Opp'n at 3-4, ECF No. 32. The Government argues only that this interest will not be "impaired" by this lawsuit and is "adequately represented." But the Government is mistaken: If Freedom From Religion Foundation's lawsuit is successful, Intervenors will suffer immediate financial harm and serious impairment of their ability to carry out their religious missions. And, unfortunately, the Government has abandoned a key legal defense that is necessary to adequately represent Intervenors. Thus, Intervenors are

1

both entitled to intervene as of right, and should be permitted to intervene as a matter of discretion.

**I. The Intervenors are entitled to intervene as of right.**

Remarkably, Plaintiffs Freedom From Religion Foundation and its officers (FFRF) filed no opposition to Intervenors' motion to intervene by the December 20 deadline listed on the docket. *See* Dkt. No. 21. FFRF therefore concedes that Intervenors should be allowed to intervene as of right. For its part, the Government does not dispute that Intervenors have a legally protectable interest in the continued vitality of the parsonage allowance. Opp'n at 3-4. Nor does the Government dispute that Intervenors filed a timely motion to intervene. *Id.* at 3 n.2. The Government has thus conceded these points as well. The Government's remaining arguments fail to rebut Intervenors' showing that this lawsuit threatens to impair their interests and that the Government does not adequately represent those interests, and thus should be granted intervention as of right.

    **A. FFRF's suit to require the IRS to begin taxing Intervenors' housing allowances may impair Intervenors' interests.**

The Government first argues that Intervenors' interests will not be impaired because they have "other means" to protect their interests—such as filing a separate action "in the Tax Court" or "Court of Federal Claims." Opp'n at 4-5. But if the Seventh Circuit strikes down the parsonage allowance, these "other means" will be entirely meaningless. The Seventh Circuit's decision will be binding on the IRS, and regardless of what the "Tax Court" or "Court of Federal Claims" might say, the IRS

would be unable to give Intervenors the benefit of the parsonage allowance without violating the Seventh Circuit's ruling and coming into contempt of court. *United States v. City of Chicago*, 870 F.2d 1256, 1262 (7th Cir. 1989); *see also Lake Inv'rs Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1260 (7th Cir. 1983) ("'[I]mpairment' exists if the decision of a legal question would, as a practical matter, foreclose rights of the proposed intervenor in a subsequent proceeding.").

*Stare decisis* aside, the Government also ignores the major practical barriers associated with these supposed "other means." *See Habitat Educ. Ctr., Inc. v. Bosworth*, 221 F.R.D. 488, 492-93 (E.D. Wis. 2004) (Rule 24 requires "only that, as a *practical*, not legal matter, [the Intervenors'] interest could be impaired.") (emphasis added). To pursue a refund action—which would be meaningless after a Seventh Circuit decision anyway—Intervenors would first have to pay taxes on their housing allowances, triggering the very financial and religious harms that Intervenors seek to prevent by intervening now. The Government offers no response to the fact that money cannot compensate for the spiritual harm that will occur if Bishop Ed and Chicago Embassy Church have to cut back their ministry on the South Side of Chicago, if Holy Cross is forced to close its doors, or if a priest in the Diocese fails to make it to a dying parishioner's bedside for a final confession because he has been forced to take additional secular work.

To proceed in Tax Court—which would be equally meaningless—Intervenors would still have to file tax returns claiming not to owe the tax and to wait until the IRS audited their returns and provided a notice of deficiency, a process that could

3

take years. In fact, the IRS could block their challenge indefinitely by not auditing the individual minister Intervenors' returns in any given year, while still claiming the ability to do so in the future. Thus, each year, these ministers would be accumulating more and more potential tax liability, with no way to obtain a ruling that ultimately resolves their legal rights.

Aware that these "other means" are hollow, the Government also argues that Intervenors can "raise their arguments in an *amicus* brief." Opp'n at 5. But courts often decline to address issues raised by an *amicus* that were not raised by a party. And the Seventh Circuit has increasingly rejected *amicus* briefs altogether. *See, e.g.*, *Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (Posner, J., in chambers). This means that, absent intervention, the key arguments that the Government is failing to make here—and that are critical to adequately representing Intervenors' interests—may never be addressed.

In short, the Government ignores the practical impairment to Intervenors' ability to protect their interests by embracing the very type of "rigid construction of Rule 24" that the Seventh Circuit has condemned. *Jessup v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000).[1]

---

[1] The cases cited in the Government's opposition do not support its position that Intervenors here have other means to protect their interests, because the proposed intervenors in those cases faced no *stare decisis* problem and no practical barriers to defending their interests outside of intervention. In *B.H. v. McDonald*, 49 F.3d 294, 297 (7th Cir. 1995), intervention was unnecessary because the proposed intervenors could simply request public access to civil proceedings in their capacity as members of the public. The proposed intervenors lost nothing from the denial of intervention,

### B. The Government does not adequately represent Intervenors' interests.

The Government admits that "intervention requires only a 'minimal showing' of inadequate representation." Opp'n at 6. Yet it claims that there is a "presumption of adequacy" because the government is a defendant. *Id.* But that argument fails for two reasons: (1) The presumption does not apply here, and (2) even if it did, the presumption has been rebutted.

Not every government party is entitled to a presumption of adequate representation—only those that are "charged by law with protecting the interests of the proposed intervenors." *See Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (government officials responsible for protecting welfare of developmentally disabled citizens); *accord United States v. South Bend Cmty. Sch. Corp.*, 692 F.2d 623, 628 (7th Cir. 1982) (school board charged with protecting students' interests). By contrast, this Court does not presume that a government party adequately represents a proposed intervenor merely because the party is responsible for enforcing a statute that the proposed intervenor utilizes. *See Sierra Club v. Jackson*, No. 09-CV-751-SLC,

---

because the court, with its next breath, went on to adjudicate the merits of their claim. *Id.* at 297-301. The other three cases, one published and another from outside the Seventh Circuit, deal with creditors seeking to intervene in government enforcement actions where their debtors had gone into receivership. *See Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs. Ltd.*, 736 F.2d 384 (7th Cir. 1984); *SEC v. Homa*, 17 Fed. App'x 441 (7th Cir. 2001) (unpublished); *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004). The receivers' claims processes were adequate alternatives to intervention, in no small part because the district court would review all claims before the receivers paid them. *See Commodity Futures Trading Comm'n*, 736 F.2d at 386-87; *Homa*, 17 Fed. App'x at 446; *Alisal Water Corp.*, 370 F.3d at 921.

2010 WL 547335, at *1 (W.D. Wis. Feb. 11, 2010). In *Jackson*, the Administrator of the EPA was not presumed to adequately represent the interests of a corporation who had secured a permit under the Clean Air Act when the Sierra Club sued the Administrator to challenge the permit. *Id.* As this Court stated, "defendant . . . represents a government agency charged with enforcing the Clean Air Act, not with protecting the proposed intervenor's interests." *Id.* Similarly, as virtually any taxpayer can attest, the IRS and Department of the Treasury are responsible for enforcing the Internal Revenue Code and collecting taxes, not for representing the interests of individual taxpayers.

Likewise, this Court cannot presume that the Government adequately represents Intervenors' interests solely because they are on the same side of the "v." The Government's attempt to paint the "same ultimate objective" presumption with a brush so broad that it would eclipse the rule that Intervenors typically need only make a "minimal" showing that "representation of [their] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). No presumption applies unless "the interests of the original party and of the intervenor are identical." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996); *cf. Trbovich*, 404 U.S. at 538-39 & n.10. Here, the Government has "substantive interests at variance" with those of Intervenors, and thus cannot adequately represent them. *See Solid Waste Agency*, 101 F.3d at 508 (citing *Trbovich*, 404 U.S. at 538-39 & n.10).

6

First, the Government does not share Intervenors' religious beliefs and faces no threat from FFRF's lawsuit to their religious missions and core First Amendment activities. Intervenors face precisely this threat, and thus have raised three affirmative defenses to FFRF's claims that the Government has not—that striking down the parsonage allowance would violate the rights secured to Intervenors by the Free Exercise Clause, the Establishment Clause, and the Due Process Clause. *See* Proposed Answer at 11, ECF No. 21-1. The Government fails to mention these affirmative defenses because it is obvious that the Government cannot adequately represent Intervenors' interests with respect to them.

Second, the Government does not share Intervenors' risk of serious financial harm and would stand to gain about $800 million in additional taxes each year without the parsonage allowance. *See* Staff of the Joint Comm. on Taxation, 114th Cong., Estimates of Fed. Tax Expenditures for Fiscal Years 2015-2019 at 28-42 (Comm. Print 2015). Under these circumstances, it can hardly be said that the Government's interests are identical to Intervenors'. The Government's reliance on authority from outside the Seventh Circuit is unpersuasive. *Freedom from Religion Foundation v. Geithner*, 644 F.3d 836 (9th Cir. 2011), conflates the preliminary question of whether a presumption applies with the subsequent one of whether the presumption has been overcome. Resting on its own prior cases, the Ninth Circuit asked whether the IRS's financial interest in maximizing tax revenue was sufficient to overcome a presumption of adequate representation by making "a compelling showing to the contrary." *Id.* at 841-42 (internal citation omitted). But in this Circuit, no

7

presumption applies in the first place unless "the interests of the original party and of the intervenor are identical." *Solid Waste Agency*, 101 F.3d at 508; *cf. Trbovich*, 404 U.S. at 538-39 & n.10. And as Intervenors have shown, they are not.

Even if this Court were to apply a presumption, Intervenors have shown that, in fact, the Government does not adequately represent their interests. The Government has abandoned a crucial defense that Plaintiffs lacks standing to seek an injunction against enforcement of § 107(2). The IRS has apparently given two Plaintiffs a refund for the taxes they paid on their housing allowances in 2013. *See* Exhibit 1 to Intervenor's Mot. Intervene, ECF No. 22-1. This strongly suggests that any other denials or delays of Plaintiffs' requested refunds stem from something wholly unrelated to their being atheists, and thus that Plaintiffs lack standing to challenge § 107(2) as a violation of the Establishment Clause. Furthermore, this suggests that Plaintiffs cannot establish the likelihood of future harm necessary to give them standing to seek injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Yet the Government has repeatedly conceded that Plaintiffs have standing to challenge § 107(2). Br. Supp. Mot. to Dismiss, at 2 n.2, ECF No. 7; Answer ¶ 2, ECF No. 17. In response to Intervenors bringing this to the Court's attention, the Government offers only that "there may be reasons other than collusion that lead to other actions." Opp'n at 8.

It is particularly surprising that the Government has abandoned this defense given that the first time FFRF challenged the parsonage allowance in this Court, the Government spent about twelve pages of its summary judgement brief arguing that

Plaintiffs likely *would* qualify for the parsonage allowance. United States' Br. in Supp. of Mot. for Summ. J. at 10-21, *Freedom from Religion Found. v. Lew*, 983 F. Supp. 2d 1051 (W.D. Wis. 2013) (No. 3:11-cv-626-bbc). At the Seventh Circuit, the Government stressed the importance of allowing the Executive Branch to determine whether atheists could qualify under § 107 before the courts heard an Establishment Clause challenge to the statute premised on the assumption that atheists would be denied. Appellant Br. at 37-38, *Freedom from Religion Found. v. Lew*, 773 F.3d 815 (7th Cir. 2014) (No. 14-1152). Yet now that the Government has apparently concluded that atheists like Plaintiffs *can* utilize § 107(2), the Government has abandoned the very jurisdictional argument that flows from their interpretation and their past actions. Intervenors need not speculate as to the Government's motive for abandoning this argument—it is enough to show that Defendants "do[] not advance a ground that if upheld by the court would confer a tangible benefit on [the Intervenors] who want[] to litigate that ground." *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 985 (7th Cir. 2011).

* * * *

Intervenors have a right to intervene because they have timely moved to protect interests that are directly threatened by this lawsuit and that the Government does not adequately represent.

**II. Alternatively, Intervenors should be granted permissive intervention.**

FFRF has conceded that permissive intervention is appropriate by failing to file any objection. The Government's principal argument against permissive intervention

9

amounts to an assertion that no one can ever intervene as a defendant because they lack "independent jurisdiction." Opp'n at 11. But this is clearly contradicted by the language of Rule 24(b), which allows permissive intervention when the proposed intervenor "has a claim *or defense* that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). Intervenors' defenses share the common question of whether § 107(2) is constitutional, yet are not merely "redundant," of the Government's, Opp'n at 11, because Intervenors alone raise standing, as well as their rights under the First and Fifth Amendments. The Tax Anti-Injunction Act is not relevant here because Intervenors are not seeking a declaratory judgment or an injunction against the collection of a tax. Rather, they offer defenses to FFRF's claim.

Further, the upshot of the Government's argument is that where the proposed intervenor has no claim against the opposing party yet still has a legally protected interest that could be impaired by the suit, the intervenor is *categorically barred* from permissive intervention. But accepting this argument would lead to the absurd result that the "strongest case" for intervention as of right, *see Solid Waste Agency*, 101 F.3d at 507, could never be allowed permissive intervention.

Allowing Intervenors to participate in this action would further judicial economy. The Government's Chicken Little argument to the contrary is unpersuasive. There are just five Intervenors, all of whom are represented by the same counsel. Intervenors will abide by this Court's scheduling order and seek to help the case proceed as expeditiously as possible. There is no need to speculate about other

hypothetical intervenors, because the Court would be free to consider the effect they would have on the case if they ever sought to appear.

## CONCLUSION

For the foregoing reasons, the Intervenors' motion to intervene should be granted.

Dated: December 22, 2016          Respectfully submitted,

/s/ Hannah C. Smith
Hannah C. Smith
Luke W. Goodrich
Daniel D. Benson
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
Email: hsmith@becketfund.org
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Proposed Intervenors*