UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANNIE LAURIE GAYLOR; DAN BARKER; IAN GAYLOR, PERSONAL REPRESENTATIVE OF THE ESTATE OF ANNE NICOL GAYLOR; and FREEDOM FROM RELIGION FOUNDATION, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>JACOB LEW, Secretary of the United States Department of Treasury; JOHN KOSKINEN, Commissioner of the Internal Revenue Service; and the UNITED STATES OF AMERICA,<br><br>    Defendants,<br><br>and<br><br>EDWARD PEECHER; CHICAGO EMBASSY CHURCH; PATRICK MALONE; HOLY CROSS ANGLICAN CHURCH; and THE DIOCESE OF CHICAGO AND MID-AMERICA OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA,<br><br>    Intervenor-Defendants. | Case No. 3:16-cv-00215 |

**BRIEF IN SUPPORT OF DEFENDANT UNITED STATES'
EXPEDITED MOTION FOR PROTECTIVE ORDER**

    Just two months ago, the intervenor-defendants represented to the Court that their intervention in this case would "not work any prejudice to the existing parties" nor "require any change to the Court's existing scheduling order." (Doc. 22 at 22.) They vowed that "the lawsuit will not be derailed" and that they did not "seek to introduce any new issue." (*Id*. at 24.) They did not mention needing discovery from the IRS but instead stressed how they could provide the

Court with "concrete facts about the unique housing needs of ministers and the particular hardships that they would face without the parsonage allowance." (*Id.* at 18.) They pledged that their participation would "further judicial economy" and "help the case proceed as expeditiously as possible" – while deriding the United States' concerns about prejudice as a "Chicken Little Argument." (Doc. 33 at 10.) The Court took the intervenors at their word and granted their motion for intervention on January 19, 2017. (Doc. 35.)

It did not take long for the intervenors to change their tune. As further explained below, on February 1 they provided the United States with notice that in a mere 22 days they planned to depose the Internal Revenue Service under Fed. R. Civ. P. 30(b)(6) on an expanse of topics spanning at least 60 years of written and unwritten IRS policies, research, discussions, meetings, and even "thought processes." Subjects for examination would include at least eight provisions of the Internal Revenue Code, how the IRS has applied them to the individual plaintiffs and any other employees of the plaintiff Freedom from Religion Foundation, and IRS policies for applying them to any other person in the United States. (Ex. 1.)

The deposition notice appears to request that the IRS and its counsel locate and contact all of the IRS's current and former "agents, employees, representatives, or attorneys" over the course of many years – easily over 100,000 people – and to collect and organize any relevant information and documents they provide. The IRS and its counsel would then have to prepare an individual (or perhaps several) to be the designated witness. That person would somehow have to memorize decades' worth of "discussions, meetings, research, analysis, thought processes, and specific circumstances," involving an unknowable number of individuals, and become able to answer under oath any pertinent questions that the intervenors' counsel might ask. Finally, according to the intervenors, the IRS and its counsel must accomplish this monumental task in a

2

mere three weeks – while simultaneously responding to the interrogatories and document requests that the intervenors served on January 31, and also preparing the Government's motion for summary judgment for filing by March 8.

The Court should forbid this oppressive deposition by issuing a protective order under Fed. R. Civ. P. 26(c). In its prior orders, the Court was quite clear that it did not see the need for significant discovery "because the parties have already litigated this case once," and it set a short deadline for summary-judgment motions. (Docs. 19-20.) Nonetheless, now that they are parties to this action, the intervenors are attempting to cram in an eleventh-hour Rule 30(b)(6) deposition – not of the plaintiffs, but of a co-defendant – that is facially overbroad, unduly burdensome, grossly disproportionate to the needs of the case, and calculated to impinge on the attorney-client, work-product, and deliberative-process privileges.

Rule 30(b)(6) was meant to improve the discovery process by preventing corporations from "bandying" corporate officers in order to hide relevant facts from their opponents. *See* Fed. R. Civ. P. 30, 1970 Adv. Comm. Notes. It was not meant to bludgeon the federal government into presenting an unnecessary and overbroad tax-policy seminar to its co-defendants on short notice at the tail end of a truncated discovery period. The Court's order allowing these clergy and churches to intervene in this case was not a license for them to create unfair prejudice to the original defendants. In light of the Court's earlier orders, there is more than good cause for a protective order here. The Court should grant the motion and forbid the deposition.

**STATEMENT OF FACTS**

Plaintiffs brought this suit to challenge the constitutionality of 26 U.S.C. § 107, which provides certain federal income tax exclusions to ministers. (Doc. 1.) The statute has two components. The first permits ministers to exclude from their income the value of any housing that is provided by their employer. 26 U.S.C. § 107(1). The second permits minsters to exclude from their income the amount of any housing allowance that they receive from their employer. 26 U.S.C. § 107(2). On October 24, 2016, the Court dismissed any claim that § 107(1) is unconstitutional and ordered that the case would proceed on the claim that § 107(2) is unconstitutional. (Doc. 15.) The original defendants answered the complaint on November 7, 2016. (Doc. 17).

On November 16, 2016, the Court ordered the parties "to explain at the preliminary pretrial conference why this case should not proceed directly to briefing on dispositive motions" given that "the parties have already litigated this case once." (Doc. 19; *see Freedom from Religion Found., Inc. v. Lew*, 983 F. Supp. 2d 1051 (W.D. Wis. 2013), *rev'd*, 773 F.3d 815 (7th Cir. 2014)). The next day, the Court entered a scheduling order setting a deadline of March 8, 2017, for dispositive motions. (Doc. 20.) The intervenor-defendants filed their motion to intervene on December 13, 2016 (Doc. 21), which the Court granted on January 19, 2017 (Doc. 35), over the original defendants' objections.

On February 1, 2017, the intervenors served counsel for the United States with a Rule 30(b)(6) notice for a deposition of the Internal Revenue Service to occur on February 23. (Ex. 1.) The notice listed the following matters for examination:

1. IRS[1] policies, written or otherwise, relating to the application of the income exclusion in 26 U.S.C. § 107, including its application to atheists, agnostics, or other nontheists, and the discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced you to develop, consider, draft, or adopt those policies.

2. Any and all changes since January 1, 2009, that have been made to the policies described in matter 1, and the discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced you to develop, consider, draft, or adopt those changes.

3. IRS policies, written or otherwise, relating to the application of all other income tax exclusions or deductions for the value of employer-provided housing or housing allowances, including 26 U.S.C §§ 119(a)(2), 119(c), 119(d), 132, 162, 911, and 912, and the discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced you to develop, consider, draft, or adopt those policies.

4. Tax returns of Annie Laurie Gaylor, Dan Barker, and Anne Nicol Gaylor, or any other employee of Freedom From Religion Foundation, Inc., for tax years 2012, 2013, and any other year since January 1, 2009, in which they excluded or deducted income pursuant to 26 U.S.C. § 107, 26 U.S.C. § 119(a)(2), or any other provision that allows taxpayers to exclude or deduct the value of employer-provided housing or housing allowances; this matter includes:

   a. Actions that the IRS took with respect to those returns;

   b. The IRS decision to permit or deny the filer to exclude the value of employer- provided housing or housing allowance and the discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced the decision of whether to permit the exclusion; and

   c. Communications that the IRS has had since January 1, 2009, with Annie Laurie Gaylor, Dan Barker, Anne Nicol Gaylor, Ian Gaylor, Freedom from Religion Foundation, or any of their agents, employees, representatives, or attorneys regarding those returns, 26 U.S.C. § 107, 26 U.S.C. § 119(a)(2), or any other provision that allows taxpayers to exclude or deduct the value of employer-provided housing or housing allowances.

---

[1] The notice stated: "As used herein, the term 'IRS' means the Internal Revenue Service and all of its agents, employees, representatives, or attorneys." (Ex. 1 at n.1.)

On January 31, 2017, the intervenors had served the original defendants with a set of interrogatories and requests for production of documents that covered all of the matters listed in the deposition notice. (Ex. 2.)

During the week of February 6, 2017, counsel for the United States had multiple telephone conversations with counsel for the intervenors to protest the discovery requests and to attempt to resolve the dispute without court action. The intervenors' counsel responded with a letter in which she characterized the discovery requests as "already reasonable." (Ex. 3.) Regarding the deposition notice, intervenors' counsel offered only to amend Matters One and Three so that they would concern years 2009 and later (i.e., the past eight years). (*Id*.) Given the intervenors' prior representations to the Court, the Court's earlier statements about the nature of this case, the Court's orders regarding discovery in this case, the current discovery schedule, and the incredible breadth of the deposition topics even with the proposed amendment, the United States did not consider the intervenors' offer to be reasonable. Therefore, the Government filed this motion for a protective order.

## ARGUMENT

The entry of an order to protect a party from oppressive or unduly burdensome discovery requires a showing of good cause. Fed. R. Civ. P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984). Moreover, the 2015 amendments limit the scope of discovery available in Rule 30(b)(6) depositions to "any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*. . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).

6

Rule 30(b)(6) deposition notices must describe the matters for examination with reasonable particularity, and courts may issue protective orders to enforce that requirement. *See, e.g., Catt v. Affirmative Ins. Co.*, 2009 WL 1228605 (N.D. Ind. 2009). Indeed, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 (7th Cir. 2000) (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)). Also, Rule 30(b)(6) implicitly requires that the deposed entity prepare its designated witnesses by having them "review all matters known or reasonably available" to the entity, so that the witnesses may give "completely knowledgeable and binding answers" on behalf of the entity. *Alloc, Inc. v. Unilin Décor N.V.*, 2006 WL 2527656, at *1-2 (E.D. Wis. 2006) (internal citations omitted). Thus, the duty to prepare a designee "goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Id*. at *2. An organization must consult all reasonably available sources, including former employees, to prepare a designated witness to testify. *See, e.g., United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

Of course, every Rule 30(b)(6) deposition imposes some burdens on the deponent, and the degree of burden will necessarily vary with the circumstances of each case. For example, a deposition of a small corporation with 20 or even 100 officers and employees, regarding narrowly defined and clearly relevant factual matters that occurred over a short time span, and scheduled with ample notice near the beginning or middle of a normal-length discovery period, is unlikely to be unduly burdensome. Counsel for the corporation could likely ascertain the individuals with relevant knowledge, interview them, gather the relevant documents, and prepare the designated witness to testify about those materials within a reasonable time. That process

would almost certainly be more efficient than requiring the corporation's adversary to depose five or ten individuals sequentially in order to discover who had knowledge of the relevant facts. Indeed, that was the very purpose for the rule. *See* Fed. R. Civ. P. 30, 1970 Adv. Comm. Notes.

As demonstrated below, the situation in this case could not be more different from that routine hypothetical.

**I.  The Rule 30(b)(6) deposition would be oppressive and unduly burdensome with respect to Matters One through Three.**

Matters One, Two, and Three in the deposition notice concern any written or unwritten IRS policies relating to the application of 26 U.S.C. § 107 and at least seven other statutory provisions to any U.S. persons. They require the witness to be provided with sufficient knowledge to testify about all "discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced [the IRS] to develop, consider, draft, or adopt those policies." (Ex. 1 at 2.) Moreover, by "IRS," the intervenors mean "all of its agents, employees, representatives, or attorneys." (*Id*. at n.1.) For the following reasons, these matters lack reasonable particularity, are overly broad and unduly burdensome, and would result in an oppressive deposition that is disproportional to the needs of this case.

**A.  These matters encompass far too large of a timeframe.**

A Rule 30(b)(6) notice may be overly broad and excessively burdensome if its matters for examination cover too long of a period of time. *See, e.g., Gossar v. Soo Line R. Co.*, 2009 WL 3570335, at *2-3 (S.D. Ind. 2009) (five-year period was too long). Here, Matters One and Three have no express time limitation, and they involve some statutes that have existed since at least the Internal Revenue Code of 1954 (e.g., 26 U.S.C. § 107 has statutory predecessors even older than that). The Government is unaware of any reported decision in which any court has ever

upheld a Rule 30(b)(6) notice covering 60 years' worth of documents, discussions, meetings, and "thought processes" – much less one that required the deposition to occur within 22 days.

The intervenors will undoubtedly note that they subsequently offered to limit Matters One and Three to the past eight years, as with Matter Two. That is still far too much time given the other problems with the notice, as discussed below. More importantly, the intervenors' behavior suggests that they are treating discovery as some sort of bargaining game in which they start with a ludicrously high offer (60 plus years), knowing full well that they do not need that much information, in the expectation that the Government and the Court will give them at least some of what they want. The Court should not condone those tactics.

**B.  These matters encompass far too many items.**

The matters for examination include not only written IRS policies spanning many years and many different statutes but also any unwritten ("or otherwise") policies and any "discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced [the IRS] to develop, consider, draft, or adopt those policies." (Ex. 1 at 2.) The inclusion of unwritten policies and unrecorded discussions, meetings, "thought processes," and "specific circumstances" within the deposition's scope forces the IRS to ask all of its current and former employees about these matters because, by definition, there is no written record of them or who was involved with them. As explained in the next section, that would be an unduly burdensome task.

Furthermore, even if the notice were limited to written materials, the universe of matters for potential examination would still be much too large. For example, a Westlaw search of 26 U.S.C. § 107 conducted by counsel for the United States on February 9, 2017, revealed 422 cases, 5 regulations, and 460 administrative decisions and guidance citing that statute alone. But

9

the intervenors are requesting that the witness have knowledge not only of how the IRS has applied § 107 but also of its policies for applying 26 U.S.C. §§ 119(a)(2), 119(c), 119(d), 132, 162, 911, 912, and "all other income tax exclusions or deductions for the value of employer-provided housing or housing allowances." (Ex. 1 at 2.) Thus, while Matters One and Two would be excessively burdensome on their own, Matter Three is off the charts.

### C. These matters encompass far too many individuals.

The intervenors were quite clear that they expected the IRS to gather information from "*all* of its agents, employees, representatives, or attorneys" for this deposition. (Ex. 1 at n.1.) (emphasis added). The IRS had 116,673 full-time-equivalent employees in 1992, which was its largest size to date. *See* 2015 IRS Data Book at 68 (Table 29), *available at* www.irs.gov/uac/soi-tax-stats-irs-data-book. Between 2009 and 2015, the number of full-time employees ranged from 94,711 to 79,890. *Id*. And these figures do not include part-time and seasonal employees. *Id*.

Obviously, many thousands of individuals have left the IRS during the many years encompassed by the deposition notice. Any number of the agency's current and former employees could have had unwritten discussions or "thought processes" about policies concerning 26 U.S.C. § 107 or any of the seven other statutes cited in the notice. The IRS has no way of knowing that ahead of time. Therefore, the intervenors would require the IRS to:

- locate many thousands of its former employees;
- contact them by telephone and/or in writing;
- ask them if they are willing to discuss these matters with their former employer (and somehow compel them to do so if they are unwilling?);

- determine what (if anything) they remember about their "thought processes" (et cetera) regarding all of these statutes while they were employees, which may have been many years earlier;

- compile and organize all of the responses;

- present all of the responses to the designated witness; and

- provide the witness with sufficient time to memorize all of the responses, to the degree necessary to testify about them from memory and under oath.

Of course, according to the intervenors, the IRS would then have to repeat that process (except for the first step) for all of its current tens of thousands of employees. The intervenors blithely assert that the IRS can accomplish all of those steps in 22 days – during the middle of tax-filing season, the agency's busiest time of year.

That is ridiculous. It is also unfair to the public who depend on the agency's services during its mission-critical time of year. Perhaps the intervenors will now claim that they did not really mean for the IRS to contact and interview that many current and former employees to prepare for the deposition. But that is exactly what they requested in their notice. To say that the parties can just "work it out" after service of the notice trivializes the seriousness of the discovery process. Parties must be taken to say what they mean, and mean what they say.

### D. The intervenors provided far too little notice for a deposition of this magnitude.

The IRS simply does not have infinite time and resources to prepare a witness to testify accurately on these virtually boundless topics. Nor does any normal human being have the memory capacity to testify accurately on these matters after no more than 22 days (likely less) of preparation. Surely even the intervenors realize this, which means they are likely counting on the Court to extend the discovery schedule so that at least some pared-down version of this

deposition might occur. But that would squarely contradict their pledge that their intervention would not "require any change to the Court's existing scheduling order." (Doc. 22 at 22.)

### E. The deposition is calculated to impinge on various privileges.

There is always some risk that the questions at a Rule 30(b)(6) deposition will stray into communications or materials protected by the attorney-client privilege, the work-product doctrine, or (in the case of a government agency) the deliberative-process privilege.[2] Rather than precluding depositions on this ground, courts often prefer that attorneys handle such isolated incidents at the deposition through objections and instructions not to answer. *See, e.g., NLRB v. Modern Drop Forge Co.*, 108 F.3d 1379 (7th Cir. 1997) (unpublished).

However, this case presents an unusual scenario. Here, the deposition notice expressly encompasses "discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced you [the IRS] to develop, consider, draft, or adopt those policies." (Ex. 1 at 2.) And it expressly includes IRS attorneys within the "you" who is being deposed. (*Id.* at n.1.) Thus, the intervenors are essentially telling the United States ahead of time that they will probe the pre-decisional thoughts and deliberations of government employees, the thoughts and research of government attorneys, and the content of discussions and meetings between government attorneys and their client. In this exceptional circumstance, the strong likelihood that the intervenors are intentionally planning to use the deposition to discover privileged matters provides yet another reason for the Court to forbid the deposition, even if that reason alone would not normally be dispositive.

---

[2] For general discussions of the deliberative-process privilege, see *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993).

**F. The deposition would be disproportional to the needs of the case.**

The 2015 amendments limit the scope of discovery available in Rule 30(b)(6) depositions to the following:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

The United States recognizes that the constitutionality of 26 U.S.C. § 107 is an important issue and that the IRS has relatively better access to information on how it has applied that section than do the intervenors. Nevertheless, as demonstrated above, accessing the broad swath of information that the intervenors are requesting and preparing a witness to testify about it would be exceptionally burdensome on the IRS and would outweigh any marginal benefit that the information might provide to the intervenors or the Court. It could also strain the IRS's resources during the tax-filing season, when the public counts on those resources the most.

Most importantly, however, the Court has already implied that this discovery is unimportant for resolving the issues and is disproportional to the needs of the case. The Court ordered the parties "to explain at the preliminary pretrial conference why this case should not proceed directly to briefing on dispositive motions" given that "the parties have already litigated this case once." (Doc. 19; *see Freedom from Religion Found., Inc. v. Lew*, 983 F. Supp. 2d 1051 (W.D. Wis. 2013), *rev'd*, 773 F.3d 815 (7th Cir. 2014)). The Court then entered a scheduling order setting a short deadline of March 8, 2017, for dispositive motions. (Doc. 20.) If the minutiae of the Government's application of eight or more statutes to all U.S. persons over the

Case: 3:16-cv-00215-bbc  Document #: 38  Filed: 02/10/17  Page 13 of 18

**F. The deposition would be disproportional to the needs of the case.**

The 2015 amendments limit the scope of discovery available in Rule 30(b)(6) depositions to the following:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

The United States recognizes that the constitutionality of 26 U.S.C. § 107 is an important issue and that the IRS has relatively better access to information on how it has applied that section than do the intervenors. Nevertheless, as demonstrated above, accessing the broad swath of information that the intervenors are requesting and preparing a witness to testify about it would be exceptionally burdensome on the IRS and would outweigh any marginal benefit that the information might provide to the intervenors or the Court. It could also strain the IRS's resources during the tax-filing season, when the public counts on those resources the most.

Most importantly, however, the Court has already implied that this discovery is unimportant for resolving the issues and is disproportional to the needs of the case. The Court ordered the parties "to explain at the preliminary pretrial conference why this case should not proceed directly to briefing on dispositive motions" given that "the parties have already litigated this case once." (Doc. 19; *see Freedom from Religion Found., Inc. v. Lew*, 983 F. Supp. 2d 1051 (W.D. Wis. 2013), *rev'd*, 773 F.3d 815 (7th Cir. 2014)). The Court then entered a scheduling order setting a short deadline of March 8, 2017, for dispositive motions. (Doc. 20.) If the minutiae of the Government's application of eight or more statutes to all U.S. persons over the

course of 60 or more years were so important to the outcome of this case, then the Court would not have set such a short deadline.  Nor did the intervenors request an extension of discovery upon their admittance to this action.  Nor did the Court state in its order (Doc. 35) that any extensions would be necessary.  In sum, a deposition on Matters One through Three would be grossly disproportional to the previously and correctly determined needs of this case, and thus the Court should forbid the deposition.

> II.   **The Rule 30(b)(6) deposition would be oppressive and unduly burdensome with respect to Matter Four.**

Matter Four in the deposition notice concerns the tax returns of the three individual plaintiffs, and any other employees of plaintiff Freedom from Religion Foundation, for any tax year since 2009 in which they excluded or deducted income under 26 U.S.C. § 107 or any other housing-related provision of the Internal Revenue Code.  (Ex. 1 at 2.)  The matter includes any actions the IRS took with respect to those returns and any IRS decisions to permit or deny any housing-related exclusions claimed in those returns (including "discussions, meetings, research, analysis, thought processes, and specific circumstances that prompted, informed, or in any way influenced the decision [of the IRS] of whether to permit the exclusion").  (*Id*.)  The matter also includes any post-2009 communications between the IRS and the plaintiffs regarding those returns or Code provisions.  (*Id*.)  The "IRS" still includes "all of its agents, employees, representatives, or attorneys."  (*Id*. at n.1.)

Matter Four has many of the same problems that plague Matters One through Three (though in some instances to a somewhat lesser degree) as well as a unique problem of its own.  Like the other matters, it encompasses an unduly long timeframe (eight years).  It involves the application of an indeterminate number of statutory provisions – at least two, but perhaps far

14

more. It encompasses unwritten and unrecorded discussions, meetings, analysis, and "thought processes." And it expressly targets for discovery the privileged pre-decisional communications and mental impressions of IRS attorneys and employees.

In addition to these problems, however, deposition testimony about the confidential tax returns and return information of non-party employees of Freedom from Religion Foundation would be barred by 26 U.S.C. § 6103, which restricts federal employees and others from disclosing that information. In the absence of a clearly applicable exception permitting disclosure, a designated witness testifying about such matters could be subjecting himself or herself to potential criminal penalties, 26 U.S.C. § 7213, and the United States to potential civil liability, 26 U.S.C. § 7431, for unauthorized disclosure. The intervenors may not have an interest in protecting the confidentiality of their opponent's employees' tax information, but the United States surely does.

Furthermore, preparing a designated witness for Matter Four would involve an inordinate burden of its own, and even more so when combined with the burdens of Matters One through Three. Here, the IRS would first have to determine the identities of all employees of Freedom from Religion Foundation over the course of eight years. That would likely involve gathering the data from all Forms W-2 issued by the Foundation during each of those years. Next, for each employee, the IRS would have to retrieve the data from their individual tax returns (and possibly copies of the returns themselves) to determine whether any of them excluded or deducted income under any of the indeterminate number of applicable statutory provisions. For those who claimed such exclusions or deductions, the IRS would then have to locate and retrieve – from wherever in the United States they may be stored – all documents concerning any actions the IRS took with respect to those returns, including the allowance or denial of the claimed exclusions or

deductions. The IRS and its counsel would then have to interview all current *and former* IRS employees and attorneys involved in those actions, compile and organize all of their responses, present all of the responses to the designated witness, and provide the witness with sufficient time to memorize all of the responses, to the degree necessary to testify about them from memory and under oath. Once more, the intervenors would require that the IRS do all of this within 22 days, during the tax-filing season, while simultaneously responding to their other discovery requests, and while the Government prepares to file its motion for summary judgment by March 8.

That request is oppressive, excessively burdensome, and disproportional to the previously determined needs of the case. Moreover, the United States has recently provided the intervenors with 1) documents from the previous case that the Government may use to support its defenses in this case, 2) documents related to the refund denials in this case, and 3) the Government's expert disclosure in this case. (Ex. 4.) Given that the Court has already determined that there is little need for discovery in this case, the parties should proceed to the summary-judgment phase where the intervenors may, as they promised, provide the Court with "concrete facts about the unique housing needs of ministers and the particular hardships that they would face without the parsonage allowance." (Doc. 22 at 18.) The intervenors do not need an oppressive Rule 30(b)(6) deposition of the IRS to tell the Court about their own needs and hardships – or for the Court to decide the matter on summary judgment.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the United States' motion for a protective order and forbid the Rule 30(b)(6) deposition.

Dated: February 10, 2017	Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General

/s/ *Richard G. Rose*
RICHARD G. ROSE
District of Columbia Bar Number: 493454
U.S. Department of Justice, Tax Division
Post Office Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-2032
Facsimile: (202) 514-6770
E-mail: richard.g.rose@usdoj.gov

/s/ *Erin Healy Gallagher*
ERIN HEALY GALLAGHER
District of Columbia Bar Number: 985670
U.S. Department of Justice, Tax Division
Post Office Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-2452
Facsimile: (202) 514-6770
E-mail: erin.healygallagher@usdoj.gov

/s/ *Gregory E. Van Hoey*
GREGORY E. VAN HOEY
Maryland Bar
U.S. Department of Justice, Tax Division
Post Office Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6391
Facsimile: (202) 514-6770
E-mail: gregory.van.hoey@usdoj.gov

JOHN W. VAUDREUIL
United States Attorney

*Attorneys for Defendant*
*United States of America*

**CERTIFICATE OF SERVICE**

    I certify that, on February 10, 2017, service of the foregoing BRIEF IN SUPPORT OF DEFENDANT UNITED STATES' EXPEDITED MOTION FOR PROTECTIVE ORDER, along with the exhibits cited therein, was made by filing it with the Clerk of Court using the CM/ECF system.

                                                       */s/ Richard G. Rose*
                                                       RICHARD G. ROSE