# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

ANNIE LAURIE GAYLOR; DAN BARKER; IAN GAYLOR, Personal Representative of the estate of ANNE NICOL GAYLOR; and FREEDOM FROM RELIGION FOUNDATION, INC.,

*Plaintiffs*,

v.

JACOB LEW, Secretary of the United States Department of Treasury; JOHN KOSKINEN, Commissioner of the Internal Revenue Service; and the UNITED STATES OF AMERICA,

*Defendants*,

and

EDWARD PEECHER; CHICAGO EMBASSY CHURCH; PATRICK MALONE; HOLY CROSS ANGLICAN CHURCH; and the DIOCESE OF CHICAGO AND MID-AMERICA OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA,

*Intervenor-Defendants*.

Case No. 16-CV-215

**DECLARATION OF HANNAH SMITH**

1. My name is Hannah Smith. I am over the age of 21 and am capable of making this unsworn declaration pursuant to 28 U.S.C. § 1746. I have not been convicted of a felony or crime involving dishonesty, and the facts below are within my personal knowledge.

2. I represent Intervenor-Defendants Bishop Edward Peecher, Chicago Embassy Church, Father Patrick Malone, Holy Cross Anglican Church, and the Diocese of Chicago and Mid-America of the Russian Orthodox Church Outside of Russia in this case.

3. This Court granted my clients' Motion to Intervene on January 19, 2017.

4. On January 30, 2017, I spoke with Richard Rose, one of the Department of Justice attorneys representing the Government in this case, to establish a working relationship with him. Erin Gallagher, another DOJ attorney, joined the call as well.

5. During that call, I asked Mr. Rose and Ms. Gallagher if they could explain the apparent difference in treatment of Plaintiffs' attempts to utilize 26 U.S.C. § 107(2) in their 2012 and 2013 amended returns—the first of which was apparently denied, and the second of which was apparently granted. I also asked if there had been a change in IRS policy that would account for the different treatment. As Intervenor-Defendants explained in their Motion to Intervene, this is relevant to Plaintiffs' alleged injury and therefore their standing to bring this lawsuit. Ms. Gallagher indicated that Defendants would not answer that question.

6. I then told them that we would be sending them some discovery requests, including a notice of a Rule 30(b)(6) witness on the topics we discussed for mid- to late February.

7. The following day, January 31, I served Defendants with Intervenor-Defendants' First Set of Interrogatories and Requests for Production to All Defendants.

One day later, February 1, I served them with a Notice of Rule 30(b)(6) Deposition of the Internal Revenue Service.

8. On February 6, Mr. Rose called me to set up a time to discuss our discovery requests. We spoke later that day. My colleague Daniel Benson joined me on this call. Mr. Rose said that he thought the requests were too broad, especially because some of them were not limited in time. Specifically, he said that it would be difficult to provide a witness to testify on matters 1-3 from our deposition notice, which deal with IRS policies for applying the various tax provisions that allow for exclusions or deductions of employer-provided housing or housing allowances. But, he said that they could work with us to provide someone to testify as to matter 4, relating to Plaintiffs' tax returns in years they excluded housing allowance income. Mr. Rose also stated that some of the requests were protected by 26 U.S.C. § 6103. From that comment, I was led to believe that any witness the Government provided to testify about Plaintiffs' tax returns would decline to answer on the basis of § 6103.

9. I told him that I would confer with my colleagues and get back to him about our discovery requests.

10. The next day, February 7, I spoke with Mr. Rose again with an offer to narrow the scope of the discovery requests. My colleague Daniel Benson joined me on this call. I explained that we would try to accommodate his concerns by limiting deposition matters 1 and 3, which originally had no temporal limitation, to current IRS policies and the discussions that led to them since January 1, 2009. The other two

matters were already limited in time to that same date. I said that we would be willing to do this if the Government would agree to designate a witness to testify on these four now-limited topics. Mr. Rose indicated that because we had included tax provisions other than § 107, he might need to provide multiple witnesses. Mr. Rose asked for the amendments in writing so he could discuss them with his chief. We sent a letter putting those amendments in writing later that day. *See* Ex. 3.

11. On February 8, Mr. Rose and I again spoke on the phone. My colleague Luke Goodrich joined the call. Mr. Rose said that the Government would not provide a witness to testify even on the more limited versions of matters 1-3. He also said that matter 4 would need to be narrowed significantly, and even then we might not be able to reach agreement.

12. In response, Mr. Goodrich asked Mr. Rose if there were any topics on which the Government would provide a Rule 30(b)(6) witness to testify. Mr. Rose answered in the negative, stating that all of matters 1-3 are beyond the scope of the litigation, and that matter 4 would need to be significantly narrowed, and even then the parties might not be able to reach agreement. Mr. Goodrich then asked whether the Government would be willing to provide a Rule 30(b)(6) witness to testify merely to the Government's current interpretation and enforcement of § 107, which is the provision subject to Plaintiffs' facial challenge. Mr. Rose again answered in the negative, stating that the IRS's current policies regarding § 107 are beyond the scope of this case, which Defendants believe is limited to the tax treatment of the individual Plaintiffs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 15, 2017

/s/ Hannah C. Smith

Hannah C. Smith
*Counsel for Intervenor-Defendants*