UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANNIE LAURIE GAYLOR; DAN BARKER; IAN GAYLOR, PERSONAL REPRESENTATIVE OF THE ESTATE OF ANNE NICOL GAYLOR; and FREEDOM FROM RELIGION FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JACOB LEW, Secretary of the United States Department of Treasury; JOHN KOSKINEN, Commissioner of the Internal Revenue Service; and the UNITED STATES OF AMERICA, <br><br> Defendants, <br><br> and <br><br> EDWARD PEECHER; CHICAGO EMBASSY CHURCH; PATRICK MALONE; HOLY CROSS ANGLICAN CHURCH; and THE DIOCESE OF CHICAGO AND MID-AMERICA OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, <br><br> Intervenor-Defendants. | Case No. 3:16-cv-00215 |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The defendants' motion for summary judgment should be granted because 26 U.S.C. § 107(2)[1] is a neutral provision that avoids Establishment Clause concerns by tailoring a generally available tax benefit to the unique church-minister context. Plaintiffs err by analyzing § 107(2) in

---

[1] All further statutory references in the text refer to the Internal Revenue Code (26 U.S.C.), unless otherwise noted.

1

isolation from the other parts of the Internal Revenue Code that provide tax benefits for employer-provided housing, all in an effort to make this case fit into the *Texas Monthly* fact pattern. As was acknowledged even in the *Texas Monthly* decision, however, a religion-specific tax benefit is fully consistent with the Establishment Clause where (as here) the benefit is grounded in some secular legislative policy that motivated similar tax breaks for nonreligious activities. Whether provided in cash or in kind, the minister's housing benefit historically was considered to be provided for the church's "convenience." *Williamson v. Comm'r*, 224 F.2d 377, 380 (8th Cir. 1955).

As a result, plaintiffs have failed to refute defendants' argument that the statute meets the three-prong *Lemon* test: it has a secular purpose; its primary effect does not advance religion; and it does not foster excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). Because the defendants have offered an interpretation of § 107(2) that is consistent with the United States Constitution, and supported that interpretation with undisputed facts, the defendants' motion for summary judgment should be granted.[2]

**I.    SECTION 107(2) AND ITS IMPLEMENTING REGULATIONS ARE CONSTITUTIONAL UNDER THE *LEMON* TEST.**

To evaluate a statute under the Establishment Clause, the "prevailing analytical tool" is the *Lemon* test. *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012), *cert. denied*, 134 S. Ct. 2283 (2014) (quotation omitted). A statute like § 107(2) is consistent with the Establishment Clause when (1) it has "a secular legislative purpose;" (2) the principal or primary effect of the statute "neither advances nor inhibits religion;" and (3) the statute does "not foster

---

[2]    Defendants do not contest plaintiffs' standing to sue under § 107(2). In addition, to the extent the IRS issued any refunds to any of the plaintiffs for income taxes paid on the amounts of their designated housing allowances, such refunds were issued erroneously.

2

'an excessive government entanglement with religion.'" *Lemon*, 403 U.S. at 612–13 (quoting *Walz v. Tax Comm'n of N.Y.C.*, 397 U.S. 664, 674 (1970)); *Elmbrook Sch. Dist.*, 687 F.3d at 849. Evaluating the undisputed material facts in this case under the *Lemon* test shows that, like other tax provisions that touch on religion, § 107(2) is consistent with the Establishment Clause. *E.g.*, *Droz v. Comm'r*, 48 F.3d 1120, 1124–25 (9th Cir. 1995) (applying the *Lemon* test and upholding the constitutionality of § 1402(g) against an Establishment Clause challenge); *Ballinger v. Comm'r*, 728 F.2d 1287, 1292–93 (10th Cir. 1984) (rejecting Establishment Clause challenge to § 1402(e)); *Templeton v. Comm'r*, 719 F.2d 1408, 1412 n.5 (7th Cir. 1983) (rejecting a constitutional challenge to § 1402(g) for lack of standing, but also noting that courts reaching the merits of that question had "uniformly held that [§ 1402(g)] is not unconstitutional under either [the Establishment or Free Exercise] clause"). Plaintiffs essentially ignore these analogous cases and instead rely almost exclusively on *Texas Monthly v. Bullock*, 489 U.S. 1 (1989).

    **A.**    **Plaintiffs fail to refute defendants' argument that § 107(2)'s secular purpose is to eliminate discrimination between religious and secular employees, and among religious employees.**

A statute need not be "unrelated to religion" to pass the "secular legislative purpose" prong of the *Lemon* test. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 335; *accord Texas Monthly*, 489 U.S. at 10 (plurality op. of Brennan, Marshall, & Stevens, JJ.) (the Supreme Court has never required "that legislative categories make no explicit reference to religion"). In fact, "[a] statute may be motivated in part by a religious purpose and nonetheless satisfy the first criterion of *Lemon*" because the law also serves a secular purpose. *Sherman ex rel. Sherman v. Koch*, 623 F.3d 501, 507 (7th Cir. 2010). Courts evaluate whether a statute has a secular purpose by looking to the "objective observer, one who takes account of the traditional external signs that show up in the text, legislative history, and implementation of the statute, or comparable official act." *McCreary County, Ky. v.*

3

*ACLU of Ky.*, 545 U.S. 844, 862 (2005) (quotations omitted). A court may also look to the statute's "interpretation by a responsible administrative agency, . . . the historical context of the statute, and the specific sequence of events leading to passage of the statute." *Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987) (internal citations omitted); *see Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1019–21, 1028 (9th Cir. 2010); *Katcoff v. Marsh*, 755 F.2d 223, 232–35 (2d Cir. 1985).

As explained in defendants' opening brief, the history of § 107(2) and its context in the Internal Revenue Code demonstrate a secular purpose: to eliminate discrimination between secular and religious employees, and among employees of different religious groups. (*See generally* Doc. 47 at 7–20.) These goals satisfy the secular purpose requirement even under the logic of the plurality opinion in *Texas Monthly* because eliminating such discrimination lifts a government burden on the free exercise of religion and § 107(2) does not "burden[] nonbeneficiaries markedly." *Texas Monthly*, 489 U.S. at 15 (citing *Amos*, 483 U.S. at 348 (O'Connor, J., concurring in judgment)). Moreover, the defendants' proffered secular purpose for § 107(2) deserves deference. *See Sherman*, 623 F.3d at 508; *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2594 (2012) ("every reasonable construction must be resorted to, in order to save a statute from unconstitutionality" (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895))).

Aside from inadequate evidentiary objections,[3] plaintiffs' only counter to the defendants' undisputed facts regarding the historical context of § 107(2) is a particular statement by

---

[3]  Plaintiffs attempt to dispute the defendants' proposed facts regarding the historical context for § 107(2), as supported by the Declaration of James Hudnut-Beumler, without stating an adequate evidentiary objection and without providing alternative facts that might create some dispute. (*E.g.*, Doc. 62 ¶ 19.) As a result, plaintiffs' asserted "disputes" are conclusory and

(continued...)

4

Representative Peter Mack, which included comments such as "we are being threatened by a godless and anti-religious world movement" and that § 107(2) should be enacted for the benefit of "these people who are caring for our spiritual welfare." (Doc. 65 at 28.) But *Lemon*'s secular purpose prong turns on *Congress's* legislative purpose in enacting the statute, not Rep. Mack's alleged purpose. *See Bd. of Educ. v. Mergens*, 496 U.S. 226, 249 (1990) (the secular purpose inquiry focuses solely on "the legislative *purpose* of the statute, not the possibly religious *motives* of the legislators who enacted the law") (plurality op.); *Newdow*, 597 F.3d at 1033; *see also United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it . . . ."). Here, the "more authoritative" committee reports from the House of Representatives and the Senate, *O'Brien*, 391 U.S. at 385, show Congress's purpose: the addition of § 107(2) was expressly intended to eliminate discrimination between ministers who received housing in-kind and those who received a cash housing allowance. *See* H.R. Rep. No. 1337, at 15 (1954); S. Rep. No. 1622, at 16 (1954). This purpose is in line with the history and evolution of the current version of § 107(2). (*See generally* Doc. 47 at 8–17.)

Regarding the context of § 107(2) within the larger Internal Revenue Code, contrary to plaintiffs' argument, defendants do not assert that § 107(2) is simply equivalent to § 119 and therefore it is constitutionally sound. Rather, § 107(2) is constitutionally sound because it is part of a comprehensive approach within the internal revenue laws to acknowledge the reality that

---

(…continued)

insufficient to actually create a disputed issue of fact requiring trial. *See* FED. R. CIV. P. 56(c); *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("[C]onclusory allegations . . . should be disregarded on summary judgment."); *Smith v. Delvaux*, No. 09-cv-233-bcc, 2010 U.S. Dist. LEXIS 15533, at *1-2 (W.D. Wis. 2010);. Therefore, the United States' proposed facts regarding the historical context for the current version of § 107 should be accepted as true.

some employees are required to have certain housing by virtue of their employment or location in the world, and that such housing costs should be excluded from their federally taxed income. (*See generally* Doc. 47 at 17–20.) Congress made the determination that housing or housing costs for such employees are provided "for the convenience of the employer" under §§ 107, 134, and 911. (*See id.* at 10–17 (describing evolution of the predecessor to § 107(2) along with the convenience of the employer doctrine)). People whose housing is dictated by their work include secular employees, §§ 119 and 280A; nonsecular employees, § 107; employees of the United States military and other agencies, §§ 134 and 911; and income-earning persons living abroad without respect to their occupation, § 912. A housing allowance is excludable from income by "ministers" under § 107(2), certain employees of the United States, §§ 134 and 911, and United States "citizens or residents" living abroad, § 912. The last group need not even receive a "housing allowance" from an employer to deduction housing costs from income for federal income tax purposes. *See* § 911(c)(4)(A). Therefore, plaintiffs miss the mark in arguing that the requirements for § 119 must apply to § 107(2).

Lastly, plaintiffs rely on the distinction between church property and minister housing (Doc. 65 at 14–15), but they ignore the unique nature of the minister (as opposed to other church/religious employees). Given that the minister "personif[ies]" the church, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 706 (2012), asking whether the minister is residing in the parsonage for the church's convenience is a somewhat circular question. The church's convenience and the minister's convenience are, for all practical purposes, one and the same. The unique nature of the church-minister relationship obviates the need for a case-by-case determination whether the employer's convenience is served. In any event, subjecting a minister's housing tax benefits to a convenience-of-the-employer requirement

6

would require inquiry into why the church provides its minister housing, and into what church business is performed in the minister's home, thus raising some of the same concerns that prompted the judicially created ministerial exception adopted by the Supreme Court in *Hosanna-Tabor*.

### B. Plaintiffs fail to refute defendants' argument that § 107(2) does not advance or inhibit religion.

To pass the second prong of the *Lemon* test, the principal or primary effect of the statute "must be one that neither advances nor inhibits religion." *Lemon*, 403 U.S. at 612–613; *Elmbrook Sch. Dist.*, 687 F.3d at 849. The "*government itself* [must] advance[] religion through its own activities and influence." *Amos*, 483 U.S. at 337. The government itself must be endorsing religion through a challenged activity. *Sherman*, 623 F.3d at 517. Courts have used the "reasonable person" test to evaluate what message the government is conveying. *Freedom from Religion Found. v. Hanover Sch. Dist.*, 626 F.3d 1, 11 (1st Cir. 2010); *Am. Atheists, Inc. v. Duncan*, 616 F.3d 1145, 1158–59 (10th Cir. 2010); *see also Elmbrook Sch. Dist.*, 687 F.3d at 850 (To evaluate the endorsement test in a religious display case "we must assess the totality of the circumstances surrounding the display to determine whether a reasonable person would believe that the display amounts to an endorsement of religion." (quotation and alteration omitted)).

The primary effect of § 107(2) is not to advance religion; instead, it is to provide an exclusion of employer-provided housing from income, like the exclusion provided to a variety of taxpayers under different provisions of the Internal Revenue Code, and to eliminate discrimination between ministers who received housing in-kind and those who received a cash housing allowance. (Doc. 47 at 7–20.) This primary effect is what the "reasonable person" would believe, in light of the totality of the circumstances surrounding the enactment and administration

7

of § 107(2). Contrary to plaintiffs' intimations, *see* Doc. 65 at 11, 12, this includes the possibility that an atheist could qualify as a "minister of the gospel" for purposes of § 107.

While plaintiffs do not quarrel with defendants' assertion that the endorsement test is objective, they offer no *facts* to support their conclusion that "[t]ax breaks provided preferentially to ministers cannot help but be perceived as an endorsement of religion" (Doc. 65 at 40.) The reasonable observer test cannot take account of the subjective feelings of any particular litigants, or else it would have no force. Instead, the only facts relevant to such a determination are the same facts that apply to the "objective observer" used in the secular purpose prong. Beyond this, plaintiffs offer only conclusory arguments that the primary effect of § 107(2) is to advance religion. (*E.g.*, Doc. 65 at 40 ("Section 107(2) was enacted as a benefit to religion, in the heat of the Cold War, and it obviously gives real and apparent endorsement, as intended.".)

In any event, the exclusion in § 107(2) is not a direct grant of aid from the government to religion, and "[t]he grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state." *Walz v. Tax Comm'n of N.Y.C.*, 397 U.S. 664, 675 (1970). Consequently, "[t]here is no genuine nexus between tax exemption and establishment of religion." *Id*. *Texas Monthly* did not produce a majority overruling this holding in *Walz*; in fact, the Supreme Court in *Rosenberger v. Rector & Visitors of the Univ. of Va.* (decided after *Texas Monthly*) relied in part on the fact that there were no prohibited "direct money payments" in holding that state funding of printing costs of religious publications did not violate the Establishment Clause. 515 U.S. 819, 842–844 (1995). Furthermore, Justice Stevens, part of the *Texas Monthly* plurality, joined a dissent in *Rosenberger* which stated that a critical point in *Walz* was that "the [property]

8

tax exemptions [in *Walz*] did not involve the expenditure of government funds in support of religious activities." *Id.* at 881 n.7 (Souter, J., dissenting).

Plaintiffs' repeated claim that taxation does not impose an impermissible burden on religion in violation of the Free Exercise Clause (*e.g.*, Doc. 65 at 2) is beside the point. Although the "Free Exercise Clause prohibits the state from imposing a 'substantial burden,'" *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013), an exemption can be a "permissible legislative accommodation of religion" under the Establishment Clause, even though it was not "compelled by the Free Exercise Clause," *Cutter v. Wilkinson*, 544 U.S. 709, 719–720 (2005). The tax benefit provided in § 107(2) is similar to that provided to non-ministers in other parts of the Code. Any difference between § 107(2) and the other Code provisions serves the secular purpose of equalizing governmental treatment of ministers and avoiding church-state entanglement. Consequently, the Government need not identify a substantial government imposed burden on Free Exercise rights.

Finally, citing the intervenors' brief, plaintiffs argue that "money motivates the defense of § 107(2)." (Doc. 65 at 24–25.) Whether true or not, the Government's motivation is different – the Government is motivated by legitimate secular concerns such as extending general tax benefits for employer-provided housing to a specific employer-employee relationship in a way that avoids entanglement and denominational concerns. This aim is consistent with the legislative history that accompanies both the statute's enactment in 1954 and its amendment in 2002. Likewise, plaintiffs' comparison to "private" employees (Doc. 65 at 24) is inapt: the Government does not have the same entanglement and denominational concerns when dealing with private employees and their employers as it does when navigating the unique church-minister context.

9

    **C.    Plaintiffs fail to refute defendants' argument that § 107(2) does not foster excessive government entanglement with religion.**

The taxing authorities of the United States necessarily have some contact with religion because "gross income means all income from whatever source derived." § 61(a); *see Walz*, 397 U.S. at 674. Section 61 does not provide an exception for income derived from an occupation as a religious leader. But this contact between the United States and religion, or religious persons, does not create an unconstitutional "establishment" of religion through "excessive entanglement." At least one court has already held that the administration of § 107 does not give rise to excessive entanglement with religion when considering whether a taxpayer qualified for the exclusion of a housing allowance under § 107(2). *Flowers v. United States*, No. CA 4-79-376-E, 1981 U.S. Dist. LEXIS 16758, at *18 (N.D. Tex. Nov. 25, 1981) ("The Court finds that the requirements of section 107 do not create the substantial entanglement of the kind which the Supreme Court was referring to in *Walz*."). Plaintiffs have not cited a case to the contrary.

To determine whether government contact with religion constitutes excessive entanglement the Court must "examine the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority," *Lemon*, 403 U.S. at 615, and whether the relationship between government and religion "is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement" *Walz*, 397 U.S. at 675. "The test is inescapably one of degree." *Id.* at 674.

Here, while § 107(2) puts government into contact with religion, it does not create "excessive entanglement" – and plaintiffs offer no facts suggesting otherwise. At base, plaintiffs' argument falls back upon the bare allegation set forth in their Amended Complaint: "In order to limit the tax break provided by §107(2) to religious clergy, the IRS must make complex,

10

intrusive and subjective inquiries into religious matters." (Doc. 65 at 40; *see also id.* at 39; Doc. 1 ¶ 26 ("In order to administer and apply § 107, moreover, the IRS and the Treasury Department must make sensitive, fact intensive, intrusive, and subjective determinations dependent on religious criteria and inquiries.").) For example, plaintiffs point to the "significant evidence" they allege is required for the IRS to make a determination under § 107(2), but they cite no facts to support the allegation. (*See* Doc. 65 at 35–39.) Beyond the plaintiffs' bare factual allegations, they simply refer to prior cases or rulings by the IRS involving § 107 and conclude that the facts in these cases show excessive entanglement. While those facts and rulings may support plaintiffs' *belief* that the defendants are unduly involved with religion, it is not enough to prove their position – or even show a genuine dispute of material fact – on the question of excessive entanglement. Moreover, plaintiffs' speculation about entanglement under § 107(2) misses the point. Given the requirements of §§ 119 and 280A(c), the Government would face entanglement issues even if §107(2) were not on the books; the legislative judgment that § 107(2) produces less entanglement than those other provisions would require is entitled to deference.

It is constitutionally permissible for a government to determine whether a person's belief is "religious" and sincerely held. *Liberty Univ., Inc. v. Geithner*, 753 F. Supp. 2d 611, 640 (W.D. Va. 2010), *aff'd sub nom Liberty Univ., Inc. v. Lew*, 733 F.3d 72 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 683 (2013) (citing *Benning v. Georgia*, 391 F.3d 1299, 1313 (11th Cir. 2004); *Sutton v. Rasheed*, 323 F.3d 236, 250–51 (3d Cir. 2003)). It is constitutionally permissible for a religion to decide what is devotional, what is a religious belief, and what is sacred, and then for the state to learn that information and determine whether it meets the criteria for certain government action or inaction. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 707–08 (2012) (using the tenets of a religion to determine whether a person constituted a

"minister" for purposes of that religion). The impermissible government entanglement comes when the government itself decides what is religious, sacred, or devotional. *See Colo. Christian Univ. v. Weaver*, 534 F.3d 1245, 1261–64 (10th Cir. 2008).

As the defendants have described, § 107(2), its implementing regulations, and the manner in which it is administered avoid excessive government entanglement with religion. (Doc. 47 at 25–33.) The IRS utilizes permissible, neutral, and objective criteria to inquire into the existence of a taxpayer's religious beliefs or practices. (*Id.* at 28–33.) The IRS does not, however, evaluate the content of a taxpayer's religious beliefs, (*see id.*), which minimizes entanglement and maintains a government policy of neutrality toward religion, *see Zorach v. Clauson*, 343 U.S. 306, 314 (1952). Plaintiffs do not dispute these facts. Because the IRS does not attempt to resolve any issues of religious doctrine, but rather seeks simply to verify an individual's position according to the religion's self-evaluated tenets and practices, it is akin to the approach taken by the Supreme Court in *Hosanna-Tabor* to determine whether a person was a "minister" who fell under the ministerial exception to employment discrimination suits, *see* 132 S. Ct. at 707–08, and avoids the concerns raised in *Texas Monthly* of the prospect of "government embroilment in controversies over religious doctrine," 489 U.S. at 20.

### D. Plaintiffs' reliance on *Texas Monthly* is misplaced.

Plaintiffs rely heavily on *Texas Monthly* in their opposition brief, as did this Court in *Freedom From Religion Foundation v. Lew*, 983 F. Supp. 2d 1051, 1053 (W.D. Wis. 2013), *vacated and remanded*, 773 F.3d 815 (7th Cir. 2014). But, as explained by defendants' in their opening brief, *Texas Monthly* is distinguishable and should not control. (Doc. 47 at 33–34.)

In *Texas Monthly*, the Supreme Court addressed a state sales-tax exemption for periodicals distributed by a "religious faith" that promoted the "teachings of the faith." 489 U.S. at 5–6. A divided majority of the Court held that this differentiation of literature based upon

12

religious content violated either the Establishment Clause (all but White, J.) or the Press Clause of the First Amendment (White, J.). *Id.* at 17–25 (Brennan, J., joined by Marshall and Stevens, JJ.); *id*. at 25–26 (White, J., concurring in the judgment); *id*. at 26–29 (Blackmun, J., joined by O'Connor, J., concurring in the judgment). Justice Blackmun's concurrence provides the rationale for the Court because it provides the narrowest grounds on which the decision is based. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (observing that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds") (citation omitted). Justice Blackmun stated that, although "some forms of accommodating religion are constitutionally permissible" (citing *Amos* as an example), the Texas sales-tax exemption was not, because it entailed "preferential support for the communication of religious messages" without any secular justification for doing so. 489 U.S. at 28.

Unlike *Texas Monthly*, however, this case invokes a number of different provisions in the Internal Revenue Code that involve the exclusion of in-kind housing or a housing allowance from a taxpayers' taxable income. Such an exclusion is not limited to housing or a housing allowance provided to "ministers" in § 107. *See* §§ 119, 134, 280A, 911 & 912. In short, *Texas Monthly* concerned a distinctly different tax exemption that lacks the redeeming features (*i.e.*, a secular justification that motivated similar tax breaks for nonreligious activities) present here.

Further, both before and after *Texas Monthly*, statutes that single out religious entities for a benefit have been held to be constitutional. "[W]e have not, and do not, adhere to the principle that the Establishment Clause bars any and all governmental preference for religion over irreligion." *Van Orden v. Perry*, 545 U.S. 677, 684 n.3 (2005) (citing *Cutter v. Wilkinson*, 544

13

U.S. 709 (2005); *Amos,* 483 U.S. 327; *Lynch v. Donnelly*, 465 U.S. 668 (1984); *Marsh v. Chambers*, 463 U.S. 783 (1983); *Walz*, 397 U.S. 664. Even the *Texas Monthly* plurality admitted that a tax benefit may permissibly target religion if there is "some overarching secular purpose that justifies like benefits for nonreligious groups." 489 U.S. at 14–15 & n.4.

After *Texas Monthly*, and without mentioning the case, the Court cited *Walz* as controlling the issue of religion-specific legislative exemptions from general statutory requirements without dissent. *Cutter*, 544 U.S. at 719; *see also Employment Division, Dep't of Human Res. Of Or. v. Smith*, 494 U.S. 872, 890 (1990), *superseded by statute as stated in Cutter*, 544 U.S. at 714–15 (inviting unsuccessful litigants to seek a religion-specific exemption from the general regulatory laws rendering them ineligible for unemployment compensation because of work-related "misconduct" involving ceremonial drug use). In *Cutter*, the Court explicitly acknowledged that government may create legislative exemptions specific to religious groups that were not conferred upon a wide array of nonsectarian groups as well as religious organizations, *Cutter*, 544 U.S. at 724–26, in contrast to what was required by the plurality opinion in *Texas Monthly*.

The Court went on to uphold an exemption that granted benefits only to those with some religious affiliation on the grounds that the statute in question "confers no privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." *Id.* at 724; *see also Cohen v. City of Des Plaines*, 8 F.3d 484, 491–92 (7th Cir. 1993) (citing *Walz* as support for its decision that a city ordinance allowing churches to operate nursery schools and day care centers without a special use permit did not "establish" religion).

*Cutter*'s citation to *Walz* shows continuity with pre-*Texas Monthly* decisions like *Amos*. Decided in 1987, the Supreme Court in *Amos* drew upon *Zorach* and *Walz* in holding that a

14

provision in Title VII of the Civil Rights Act of 1964 exempting religious organizations from the prohibition against religious discrimination in employment did not violate the Establishment Clause. 483 U.S. at 335, 339. From *Walz*, the *Amos* court concluded that an exemption statute could be a permissible accommodation of religion. *Id.* at 334–35; *cf. Hosanna-Tabor*, 132 S. Ct. at 705–06 (affirming that there is a "ministerial exception" to employment discrimination laws like Title VII of the Civil Rights Act). "There is ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference." *Amos*, 483 U.S. at 334 (quotation omitted).

## II. SECTION 107(2) DOES NOT VIOLATE THE DUE PROCESS CLAUSE.

Plaintiffs do not contest defendants' argument that their claims should be evaluated under the Establishment Clause. Even when challenged under the Due Process Clause for alleged violation of equal protection rights, the Establishment Clause analysis is the proper one to undertake for a statute like § 107(2) that provides particular treatment "to all religions" and does not discriminate among them. *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 338–39 (1987); *accord Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004); *Larson v. Valente*, 456 U.S. 228, 252 (1982); *see World Outreach Conf. Ctr. v. City of Chi.*, 591 F.3d 531, 534 (7th Cir. 2009); *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (holding that a plaintiff's "free-exercise claim arises under the First Amendment and gains nothing by attracting additional constitutional labels" like equal protection); *Eulitt ex rel. Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 354 (1st Cir. 2004). A statute that is consistent with the Establishment Clause then receives only rational basis scrutiny in the equal protection analysis. *Locke*, 540 U.S. at 720 n.3; *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 638 (7th Cir. 2007).

On the merits, plaintiffs offer neither contrary law nor genuine disputes of material fact to counter the proposition that § 107(2) survives rational basis scrutiny because it has the legitimate purpose of eliminating discrimination between secular and religious employees and among religious employees, all while limiting government contact with religion to objectively verifiable information that does not inquire into the content of religious tenets. *See Amos*, 483 U.S. at 339; *see also Locke*, 540 U.S. at 720 n.3; *St. John's United Church of Christ*, 502 F.3d at 638; *Templeton*, 719 F.2d at 1414 (§ 1402(e) and (g) are rationally related to Congress's intent to accommodate particular religious beliefs with an exemption from the requirement of paying Social Security tax). Therefore, plaintiffs cannot show that there is any issue for trial regarding whether § 107(2), or the manner in which it is administered, violate plaintiffs' equal protection rights.

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in the defendants' opening brief, the defendants' motion for summary judgment should be granted.

Dated: April 24, 2017

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General

/s/ *Erin Healy Gallagher*
ERIN HEALY GALLAGHER
District of Columbia Bar Number: 985670
U.S. Department of Justice
Tax Division
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-2452
Facsimile: (202) 514-6770
E-mail: erin.healygallagher@usdoj.gov

/s/ *Richard G. Rose*
RICHARD G. ROSE
District of Columbia Bar Number: 493454
U.S. Department of Justice
Tax Division
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-2032
Facsimile: (202) 514-6770
E-mail: richard.g.rose@usdoj.gov

JEFFREY M. ANDERSON
Acting United States Attorney

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that, on April 24, 2017, service of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT was made upon all parties by filing it with the Clerk of Court using the CM/ECF system.

*/s/ Richard G. Rose*
RICHARD G. ROSE