**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

ANNIE LAURIE GAYLOR; DAN BARKER; IAN GAYLOR, Personal Representative of the estate of ANNE NICOL GAYLOR; AND FREEDOM FROM RELIGION FOUNDATION, INC.,

*Plaintiffs*,

v.

JACOB LEW, Secretary of the United States Department of Treasury; JOHN KOSKINEN, Commissioner of the Internal Revenue Service; and the UNITED STATES OF AMERICA,

*Defendants*,

and

EDWARD PEECHER, CHICAGO EMBASSY CHURCH, PATRICK MALONE, HOLY CROSS ANGLICAN CHURCH, AND THE DIOCESE OF CHICAGO AND MID-AMERICA OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA,

*Intervenor-Defendants*.

Case No. 16-CV-215

**INTERVENOR-DEFENDANTS' RESPONSES TO PLAINTIFFS' PROPOSED FINDINGS OF FACT**

1. The Plaintiff, Dan Barker, is a federal taxpayer who objects to the allowance of preferential and discriminatory tax benefits under § 107 of the Internal Revenue Code ("IRC"), including income tax exemptions for cash housing

allowances paid as part of compensation to ministers of the gospel. (Barker Decl., ¶2.)

***Response:*** Undisputed that Dan Barker is a federal taxpayer who objects to § 107. The remainder is a disputed proposition of law. As Intervenors show in their briefs, § 107 is consistent with the Establishment Clause.

2. The Plaintiff, Annie Laurie Gaylor, is Barker's wife, and they are the co-Presidents of The Freedom from Religion Foundation ("FFRF"). Barker is also the son-in-law of Anne Nicol Gaylor, deceased in 2015, whose estate is also a Plaintiff in this matter. (Barker Decl., ¶3.)

***Response:*** No dispute.

3. Ms. Gaylor and Barker have each received a designated housing allowance from their employer, FFRF, designated by the FFRF Executive Council, FFRF's governing body, for each and every year since 2011. Anne Gaylor also received designated housing allowances during her lifetime, including for tax year 2013. (Barker Decl., ¶4.)

***Response:*** No dispute.

4. The FFRF Executive Council first designated housing allowances for Ms. Gaylor and Barker in August of 2011. The Executive Council designated the amount of $4,500 from each of our salaries yet to be paid in 2011. (Barker Decl., ¶5.)

***Response:*** No dispute.

5. In addition, FFRF designated the amount of $13,200 from each of the salaries of Ms. Gaylor and Barker to be paid in 2012 as a housing allowance. The designated housing allowances were established for each month at $1,100. (Barker Decl., ¶6.)

***Response:*** No dispute.

6. On October 12, 2012, the FFRF Executive Council renewed its prior housing allowance resolution, designating the amount of $15,000 to be paid in 2013 as a designated housing allowance. (Barker Decl., ¶7.)

***Response:*** No dispute, except to clarify that this finding and the evidence it cites refer only to Annie Laurie Gaylor and Dan Barker.

7. Additional annual housing allowances have been designated for each of the tax years 2014-2017. (Barker Decl., ¶8.)

***Response:*** No dispute, except to clarify that this finding and the evidence it cites refer only to Annie Laurie Gaylor and Dan Barker.

8. The housing allowances designated by FFRF for Ms. Gaylor and Barker have been intended to approximate their actual housing expenses for each year. (Barker Decl., ¶9.)

***Response:*** No dispute, but the finding is incomplete. Gaylor and Barker's 2012 housing allowance exceeded their actual expenses by $328. Plaintiffs Annie Laurie Gaylor and Dan Barker's Answers to Defendant United States of America's First Set of Written Interrogatories, Interrogatory 3h, ECF No. 51-7 at Int-Def MSJ 143.

9. For example, the housing expenses for Ms. Gaylor and Barker for 2012 totaled approximately $26,072, including $14,522 as mortgage payments and $7,767 as property taxes. (Barker Decl., ¶10.)

***Response:*** No dispute.

10. Housing expenses for Ms. Gaylor and Barker for 2011 totaled approximately $26,136, including $14,552 as mortgage payments and $7,444 as property taxes. (Barker Decl., ¶11.)

***Response:*** No dispute.

11. Barker has long considered the exemption allowed only to ministers to be discriminatory and unfair. (Barker Decl., ¶12.)

***Response:*** No dispute that Barker feels this way.

12. In 2011, therefore, he joined in a lawsuit with Annie Laurie Gaylor and Anne Nicol Gaylor, challenging the preference allowed under Internal Revenue Code for cash housing allowances provided to ministers of the gospel, or other religious clergy, contending that this discriminatory and unfair preference violated the Establishment Clause of the United States Constitution. (Barker Decl., ¶13.)

***Response:*** No dispute that Barker, Annie Laurie Gaylor, and Anne Nicol Gaylor filed a lawsuit in 2011 challenging § 107 on Establishment Clause grounds. The remainder is a disputed characterization of the law, not a finding of fact.

13. This court subsequently held that § 107(2) of the Internal Revenue Code is indeed unconstitutional, but the Seventh Circuit Court of Appeals reversed that decision on the basis of standing considerations. The Court of Appeals concluded that the Plaintiffs needed to actually be denied exemption for their housing allowances under § 107(2), in order to have standing. (Barker Decl., ¶14.)

***Response:*** No dispute that this Court held that § 107(2) was unconstitutional, and was then reversed by the Seventh Circuit because Plaintiffs lacked standing. The remainder is a characterization of the Seventh Circuit opinion, which speaks for itself.

14. Ms. Gaylor and Barker, accordingly, filed an amended U.S. Individual Income Tax Return for tax year 2013. This amended tax return was mailed to the Internal Revenue Service in January of 2015. The amended return claimed the designated housing allowances for Ms. Gaylor and Barker as exclusions from income and they sought a partial refund of taxes paid. (Barker Decl., ¶15 and Ex. 1.)

***Response:*** No dispute.

15. On March 2, 2015, the IRS actually allowed their refund in the amount of $7,220. (Barker Decl., ¶16 and Ex. 2.)

***Response:*** No dispute.

16. Ms. Gaylor and Barker then filed an amended income tax return for tax year 2012.This amended return was sent to the IRS on or about March 15, 2015. (Barker Decl., ¶17 and Ex. 3.)

***Response:*** No dispute.

17. The IRS subsequently disallowed this claim for a housing allowance exemption, by letter dated July 16, 2015. (Barker Decl., ¶18 and Ex. 4.)

***Response:*** No dispute.

18. Ms. Gaylor and Barker then responded to the IRS on July 21, 2015, citing § 107(2) of the Internal Revenue Code as the basis for their claim. (Barker Decl., ¶19.)

***Response:*** No dispute.

19. Ms. Gaylor and Barker thereafter received communications from the IRS on August 20, 2015, November 25, 2015, and January 12, 2016, indicating that the IRS was still working on their request to be allowed a housing allowance. (Barker Decl., ¶20 and Ex. 5.)

***Response:*** No dispute.

20. Having no substantive response to their July 21, 2015 letter, Ms. Gaylor and Barker, as well as the Estate of Anne Gaylor, commenced the present action in April of 2016. (Barker Decl., ¶21.)

***Response:*** No dispute.

21. Finally, on June 27, 2016, the IRS communicated to Plaintiffs its denial of their refund request for tax year 2012, on the basis that Ms. Gaylor and Barker do not qualify as ministers of the gospel. The IRS stated in its letter as follows:

> My review of the information previously submitted by you indicates your claim should be denied. Your claim appears to be based on a portion of your wages being deemed to be a housing allowance. Your letter dated 07/14/2015 states that you are aware that a housing allowance is excludable from income if you are a minister of the gospel and also avows that neither of you are ministers of the gospel. It goes on to state that this is unfair and discriminatory. It appears that your concerns are misdirected. Congress writes tax laws and it is the job of the Internal Revenue Service to implement them. In other words, Congress set the rules and the IRS has to explain how those rules are applied in different situations. IRC Section 107 specifically requires that to exclude a housing allowance from income you must be a minister of the gospel. The IRS does not have the authority to interpret this to include anyone other than those who meet this definition.

(Barker Decl., ¶22 and Ex. 6.)

***Response:*** No dispute that Plaintiffs received this June 27, 2016, IRS communication denying their 2012 refund request, and that this finding quotes from that communication. The remainder is a disputed characterization of the IRS communication, which speaks for itself. Plaintiffs' refund request was denied because Plaintiffs themselves "avow[ed] that neither of [them] are ministers of the gospel," not because the IRS determined that they could not qualify as such. Ex. 6 to Barker Decl, ECF No. 60-6.

22. In the meantime, since its letter of June 27, 2016, the IRS has never advised the Plaintiffs that it has changed its position with regard to Plaintiffs' qualification for a cash housing allowance exemption, including throughout the present proceedings. (Barker Decl., ¶23.)

***Response:*** Disputed and unsupported. Plaintiffs' refund request was denied

because Plaintiffs themselves "avow[ed] that neither of [them] are ministers of the gospel," not because the IRS determined that they could not qualify as such. Ex. 6 to Barker Decl, ECF No. 60-6.

23. Barker is aware, nonetheless, that the Intervenors contend that Ms. Gaylor and Barker lack standing to seek prospective relief because it is allegedly speculative whether they will be denied subsequent exemption requests for their housing allowances. (Barker Decl., ¶24.)

***Response:*** No dispute. Any future harm to Ms. Gaylor and Mr. Barker is speculative.

24. Contrary to the Intervenors' claims, the IRS's most recent communication with Ms. Gaylor and Barker, dated June 27, 2016, clearly implies that they will be denied subsequent refund requests, including for housing allowances that have been designated for tax years 2014, 2015, 2016, and 2017. (Barker Decl., ¶25.)

***Response:*** This is a disputed conclusion of law, not a finding of fact. Plaintiffs' refund request was denied because Plaintiffs themselves "avow[ed] that neither of [them] are ministers of the gospel," not because the IRS determined that they could not qualify as such. Ex. 6 to Barker Decl, ECF No. 60-6.

25. Ms. Gaylor and Barker have been awaiting the outcome of the present litigation before filing any further amended returns, but it has always been their intent to seek equal treatment for tax years subsequent to 2012 and 2013, which is a purpose of this suit. (Barker Decl., ¶26.)

***Response:*** Disputed. Mr. Barker stated in deposition that he "do[es]n't want the exclusion." Barker Deposition, ECF No. 51-5, at 65. Plaintiffs complaint states that the "equal treatment" they seek is "denying benefits to . . . ministers." Compl. ¶ 55, ECF No. 1.

26. Accordingly, Ms. Gaylor and Barker have now filed amended returns for 2014 and 2015, in which they seek a refund of income taxes previously paid on their

designated housing allowances for those years. They also intend to seek exemption for their housing allowances for 2016 and all future years for which they receive a designated housing allowance. (Barker Decl.,¶ 27 and Exs. 7 and 8.)

***Response:*** No dispute about Plaintiffs' intentions for the future, but the finding is incomplete. In their complaint in this case, Plaintiffs are not seeking a refund of any taxes paid. *See* Compl. Prayer for Relief ¶ A-D. Instead, they seek an injunction against the enforcement of § 107. *Id.* ¶ 1, 50, 55, Prayer for Relief ¶ B.

27. In addition, Anne Gaylor filed an amended tax return for tax year 2013, before her death in 2015, in which she also sought a refund of taxes paid on her designated housing allowance. (Barker Decl., ¶28 and Ex. 9.)

***Response:*** No dispute.

28. On or about April 13, 2015, Ms. Gaylor received a letter from the IRS indicating that her amended return, received on March 4, 2015, was being sent to the Ogden Customer Service Center to process. (Barker Decl., ¶29 and Ex. 10.)

***Response:*** No dispute.

29. The IRS, however, apparently has never taken any action on Anne Gaylor's refund request. Ms. Gaylor died on June 14, 2015. (Barker Decl., ¶30.)

***Response:*** Disputed. The IRS has taken many actions with respect to Anne Gaylor's refund request, but it has not yet granted or denied the request. Government Discovery, ECF No. 51-3 at Int-Def MSJ 124-40. No dispute that Anne Gaylor died on June 14, 2015.

30. As co-Presidents of FFRF, Ms. Gaylor and Barker have extensive responsibilities, including responsibilities that require them as a practical matter to live in close proximity to the offices of FFRF. Ms. Gaylor and Barker, in fact, live within walking distance of FFRF's offices, and they respond to any emergencies that may arise, including fire alarm activation, or other situations requiring immediate

attention, and they meet with FFRF members who visit the building on the weekend, etc. (Barker Decl., ¶31.)

***Response:*** Disputed. In depositions, Ms. Gaylor and Mr. Barker stated that, while it may be "convenient" or "nice" for them to live near the FFRF office, it is not required. Gaylor Deposition, ECF No. 51-4, at 31; Barker Deposition, ECF No. 51-5, at 62.

> Gaylor Deposition at 29:
> Q: So of those task, what, if any, require the use of your home for purposes of FFRF?
> A: Nothing absolutely requires it . . . .
>
> *Id.* at 31:
> Q: Is there anything about the house that you live in that makes it necessary for the purposes of FFRF?
> A: No, but it's very convenient.
>
> Barker Deposition at 62:
> Q: So what about the rest of your tasks that you perform as co-president of Freedom From Religion Foundation, what, if any, tasks are required to take place at your home?
> A: None are required.
> * * *
> Q: Is there any reason that you're required to live where you live for the convenience of Freedom From Religion Foundation?
> A: There is no formal reason for that.
> Q: Are there any informal reasons?
> A: It's nice to be close . . . . It's not required, but it is informally nice for us to have a home pretty close to the office . . . .
>
> Mr. Barker stated that they have hosted FFRF members at their home only "occasionally." *Id.*

31. Ms. Gaylor and Barker also work extensively on FFRF matters while at home. (Barker Decl., ¶32.)

***Response:*** No dispute.

32. Barker cannot help but recognize the unfairness that religious clergy are allowed to exempt designated housing allowances, while Ms. Gaylor and Barker, co-

Presidents of the nation's largest free-thought organization, are denied similar treatment of their housing allowances. The unfairness is brought home to Barker by the Intervenors' argument that "they need the money." (Barker Decl., ¶33.)

***Response:*** This is a characterization of Intervenors' filings and of the law, not a finding of fact. The filings and the law speak for themselves. No dispute that Mr. Barker feels as he does.

33. The Intervenors contend that the exemption of their housing allowances are necessary and desirable in order to effectively increase their compensation, which allows them to provide more religious services. The same reasoning of "need," however, applies as well to Ms. Gaylor and Barker, and their employer, FFRF. Exempting the designated housing allowances for Ms. Gaylor and Barker would have a positive financial effect on them, thereby increasing their ability to engage in the activities to which FFRF is committed. (Barker Decl., ¶34.)

***Response:*** This is a characterization of Intervenors' filings, not a finding of fact. The filings speak for themselves. No dispute that utilizing § 107(2) would save Ms. Gaylor and Mr. Barker money. The remainder is unsupported. The cited evidence says nothing of how Ms. Gaylor and Mr. Barker's personal savings would "increase[] their ability to engage in the activities to which FFRF is committed."

Dated: April 24, 2017

Respectfully submitted,

/s/ Hannah C. Smith
Hannah C. Smith
Luke W. Goodrich
Daniel D. Benson*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
Email: hsmith@becketfund.org
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Intervenor-Defendants*

**Admitted in Utah and the Western District of Wisconsin, but not in D.C. Supervised by Ms. Smith and Mr. Goodrich, members of the D.C. Bar.*