UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANNIE LAURIE GAYLOR; DAN BARKER; IAN GAYLOR, PERSONAL REPRESENTATIVE OF THE ESTATE OF ANNE NICOL GAYLOR; and FREEDOM FROM RELIGION FOUNDATION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STEVEN MNUCHIN, Secretary of the United States Department of Treasury; JOHN KOSKINEN, Commissioner of the Internal Revenue Service; and the UNITED STATES OF AMERICA, <br><br> Defendants, <br><br> and <br><br> EDWARD PEECHER; CHICAGO EMBASSY CHURCH; PATRICK MALONE; HOLY CROSS ANGLICAN CHURCH; and THE DIOCESE OF CHICAGO AND MID-AMERICA OF THE RUSSIAN ORTHODOX CHURCH OUTSIDE OF RUSSIA, <br><br> Intervenor-Defendants. | Case No. 3:16-cv-00215 |

**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING REMEDIES**

On October 6, 2017, the Court declared that 26 U.S.C. § 107(2) violates the establishment clause of the First Amendment to the United States Constitution. (ECF No. 87.) The Court gave the parties until October 30, 2017 to file supplemental briefs addressing whether any additional remedies are appropriate and whether relief should be stayed pending a potential appeal. (*Id.*) Notwithstanding the Court's conclusion, the defendants maintain, of course, that

1

26 U.S.C. § 107(2) is constitutional. In any event, pursuant to the Court's order, the defendants submit the following supplemental brief.

## I. THE APPROPRIATE REMEDY IS NULLIFICATION.

### A. The Court should not issue an injunction requiring the IRS to "extend the benefits under the statute to those excluded."

In light of the Court's conclusion that § 107(2) is unconstitutional, the appropriate remedy here is nullifying § 107(2), not extending the tax exemption to others. The Supreme Court has held that when a litigant successfully challenges a statute as underinclusive, a court can provide a remedy either by declaring the statute a nullity and not extending it to the intended class, or by extending its coverage to include those aggrieved by the exclusion. *Heckler v. Mathews*, 465 U.S. 728, 738 (1984). In choosing between nullification and extension, however, a court should not use its remedial powers to circumvent legislative intent. *Id.* at 739 n.5. Rather, the court should "measure the intensity of commitment to the residual policy and consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation." *Id.* (quoting *Welsh v. United States*, 398 U.S. 333, 365 (1970) (Harlan, J. concurring in the result)). The "appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 (2017) (quoting *Heckler v. Mathews*, 465 U.S. 728, 740 (1984)). Which of these approaches to take "is governed by the legislature's intent, as revealed by the statute at hand." *Id.* at 1699; *see also id.* at 1701 (the Court "must adopt the remedial course Congress likely would have chosen had it been apprised of the constitutional infirmity").

In *Morales-Santana*, the Supreme Court held that a provision of the Immigration and Nationality Act extending citizenship to certain children with one U.S. citizen parent violated

equal protection principles because it provided more lenient rules for unwed U.S. citizen mothers than for unwed U.S. citizen fathers.  The Court held that the proper remedy for this equal protection violation was to eliminate the favorable treatment of mothers, rather than expanding the rights of fathers.  As the Court explained, the "residual policy" at issue, *i.e.*, "the longer physical-presence requirement" set forth in the statute "evidences Congress' recognition of the importance of residence in this country as the talisman of dedicated attachment."  *Id.* at 1700 (internal punctuation and citation omitted).  In light of that policy concern, and "the potential for 'disruption of the statutory scheme,'" *id.*, the Court simply nullified the exception at issue.

By contrast, in *Moritz v. Comm'r*, 469 F.2d 466 (10th Cir. 1972), the Court decided to extend an underinclusive benefit, rather than nullify the statute.  In *Moritz*, the taxpayer challenged a decision that he was not entitled to a deduction for expenses for the care of his dependent, invalid mother because the deduction he sought was available only to a woman, a widower or divorcé, or a husband whose wife is incapacitated or institutionalized.  The court concluded that the classification at issue – denying the deduction to men who have never been married – was invalid.  *Id.* at 470.  Rather than nullify the statute, and thereby eliminating the benefit of the deduction for all qualifying taxpayers, the court decided that extending its coverage to the class of individuals represented by the taxpayer, *i.e.*, unmarried men, was "logical and proper" under the circumstances.  *Id.*  Lastly, the court noted that its "disposition is preferable to the disruption which the invalidation of the entire section on such deductions would bring about."  *Id.* at 470 n.5.

Here, nullification of § 107(2) is the appropriate remedy.  The legislative intent in this case is clear.  All employees — religious or lay — are entitled to exclude from gross income the value of "lodging furnished to him" by his "employer for the convenience of the employer."  26

U.S.C. § 119.  When the convenience-of-the-employer doctrine was initially developed, the Treasury applied it to many secular employees, but not to ministers.  Consequently, § 107(1) simply levels the playing field between ministers and other types of employees.  Moreover, by enacting § 107(2), Congress removed tax-related impediments to a church's decision whether to furnish a parsonage to its minister in cash or in kind, thereby avoiding interference in the church's internal affairs.  *See* H.R. 4156, 107th Cong. § 2(a)(3) (observing that one purpose of § 107 is to "minimize government intrusion into internal church operations and the relationship between a church and its clergy").  Congress exercised the discretion that accompanies its taxing power to create the exemption at issue, and it has not indicated an intent to provide it to a much broader group.

There are additional fundamental difficulties inherent in extending the exemption instead of eliminating it. For starters, exclusions from income are a matter of legislative grace, *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934), and are to be interpreted narrowly.  Accordingly, it would be inappropriate for a court to expand or extend exclusions or deductions that Congress has created.  The most recent tax expenditure analysis released by the Joint Committee on Taxation scores the tax benefit resulting from § 107(1) and (2) at approximately $800 million.  *See* https://www.jct.gov/publications.html?func=startdown&id=4971.  If the Court were to extend the tax exemption to others, the effect would not only be to supersede, in part, § 119, but it would also create a tax expenditure of unknown amount.

In addition, the difficulty with such an endeavor is immediately apparent.  The Court would need to define which secular organizations would be eligible to provide such a benefit to its employees.  The Court would also need to define which employees of secular organizations qualified as "ministers."  Indeed, the Court has already acknowledged there are "a number of

4

alternative exemptions" that could have been enacted. (ECF No. 87, at 43.) But the Court cannot pick among the various alternatives and essentially re-write the statute because that is a task left to Congress, not the Court. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509–10 (2010) ("In theory, perhaps, the Court might blue-pencil a sufficient number of the Board's responsibilities so" as to cure a constitutional infirmity "[b]ut such editorial freedom—far more extensive than our holding today—belongs to the Legislature, not the Judiciary.").

If the Court were to extend the benefit to the plaintiffs instead of eliminating it entirely, the Court should extend relief to the plaintiffs only via a refund and not in the form a nationwide injunction. This is true for two reasons. First, both constitutional and equitable principles require that injunctive relief be limited to redressing a plaintiff's own cognizable injuries. Article III demands that "a plaintiff must demonstrate standing . . . for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). "The remedy" sought thus must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). "The actual-injury requirement would hardly serve [its] purpose . . . of preventing courts form undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in that administration." *Id.* And equitable principles independently require that an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Crt., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted).

Second, an injunction that extended the exemption at issue would violate the Anti-Injunction Act, 26 U.S.C. § 7421, which provides generally that "no suit for the purpose of

5

restraining the assessment or collection of any tax shall be maintained in any court by any person." Whether an injunction *prohibiting* the tax exclusion could be permissible under the rationale of *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (construing Tax Injunction Act, 28 U.S.C. § 1341), might be an open question because the effect of such an injunction would be to *increase* tax revenues. *See also Tax Analysts & Advocates v. Schultz*, 376 F. Supp. 889 (D.D.C. 1974) (Anti-Injunction Act does not apply when plaintiffs seek to require the Commissioner to collect additional taxes). But an injunction *extending* the tax exclusion would have the effect of *decreasing* tax revenues, and would therefore violate the Anti-Injunction Act by significantly expanding the number of taxpayers who could exclude housing costs from their gross income.

For all the above reasons, nullification of the statute, rather than extension of the exemption, is the appropriate remedy.

      **B.**      **The plaintiffs have not overpaid their taxes and are not entitled to a refund.**

In light of the Court's ruling that § 107(2) is unconstitutional, and because nullification of that statute is the proper remedy, the plaintiffs in this case have not overpaid their taxes, and thus are not entitled to any refund.

The individual plaintiffs in this case received a "rental allowance," also called a "housing allowance," from their employer. (ECF No. 44, ¶¶ 5-6, 10-11.) Annie Laurie Gaylor and Dan Barker included the amount of their designated housing allowances as part of their reported income for tax year 2012 and, accordingly, paid taxes on those housing allowances. (ECF No. 44, ¶ 7.) Annie Laurie Gaylor and Dan Barker filed an amended income tax return for tax year 2012 seeking a refund of income taxes they paid on the housing allowance designated by FFRF for that year. (ECF No. 44, ¶ 8.) The IRS sent a notice of disallowance of their claim in July 2015. (ECF No. 44, ¶ 9; ECF No. 60 ¶ 18; ECF No. 60-4.) They sued on their claim in this Court in April 2016. (ECF No. 1.) After the notice of disallowance, and continuing after they

filed the complaint, Annie Laurie Gaylor and Dan Barker corresponded with the IRS to protest the disallowance. (ECF No. 63 ¶¶ 17-19.)

Likewise, Anne Nicol Gaylor included the amount of her designated housing allowance as part of her reported income for tax year 2013 and, accordingly, paid taxes on that housing allowance. (ECF No. 44, ¶ 12.) Before June 14, 2015, Anne Nicol Gaylor filed an amended income tax return for tax year 2013 seeking a refund of income taxes she claimed to have paid on a housing allowance designated by FFRF for that year. (ECF No. 44, ¶ 13; ECF No. 1 ¶ 4; ECF No. 17 ¶ 4.) The IRS did not take action on her claim within six months of the date that she filed it. (ECF No. 44, ¶ 14.) Anne Nicol Gaylor sued on her claim in this Court in April 2016. (ECF No. 1.)

The basis for the plaintiffs' request for refund is § 107(2), which provides an exception from gross income for the housing allowance that a minister receives from an employer. If the Court is correct that § 107(2) is unenforceable, and that nullification of the statute is proper, the plaintiffs have not overpaid their taxes and are not entitled to any refund. The reason is straightforward. The legal basis for the requested refund – exempting from gross income the amount of any housing allowance received from an employer under § 107(2) – is no longer (according to this Court) good law. As a result, the plaintiffs have no authority upon which to anchor their claim that they overpaid their taxes. In short, the exemption from income they are seeking is void, they have therefore not overpaid their taxes, and no refund is due.

## II.    THE COURT SHOULD STAY ALL RELIEF PENDING APPEAL.

The government is still considering whether to appeal the Court's final judgment in this case, and the Court should stay all relief until 180 days after the final resolution of all appeals. For all the reasons set forth in the defendants' summary judgment briefing, the defendants believe there is a likelihood the Court's decision will ultimately be reversed. In any event, if the

Court does not stay relief until all appeals have been resolved, compliance with the Court's order during the interim period would cause substantial disruption at the IRS and substantial interim uncertainty for taxpayers.

Immediate revision to numerous administrative materials and instructions related to the application of the allowance would be necessary, including issuing specific procedures to employees who might have responsibility for administering § 107(2), such as processing tax returns, conducting examinations, or answering questions. A public information campaign geared toward those who typically avail themselves of the exemption in § 107(2) would need to be launched in advance of the 2018 tax return filing season, in part to help inform these taxpayers of the need to pay additional taxes and possible interest and penalties (based on the ability or timing of making such additional tax payments).

The tasks required of the IRS would be compounded significantly if the Court were to order expansion of the exclusion, rather than nullification as outlined above, including providing additional procedures for employees who would handle or examine the possible untold numbers of refund claims that would potentially be filed. The IRS would be required to process any refund claim taxpayers may bring forth for prior years, or at least develop a plan to place a hold on these claims pending the outcome of any appeal.

In addition to placing a significant burden on the IRS, the sudden change would create interim uncertainty and substantial confusion for taxpayers across the United States. Then, if the Court's order is ultimately vacated, all of the IRS's efforts to comply will have been wasted and taxpayers inconvenienced (at a minimum) if they changed their tax treatment in the interim. Such a scenario can reasonably be expected to cause substantial confusion, harming IRS's and the public's interest in the orderly administration of the internal revenue laws. In addition, a stay

of all relief until 180 days after the final resolution of all appeals would provide the IRS, and perhaps Congress and the Treasury Department, additional time to adjust to a substantial change in tax policy and administration. In light of the substantial effect that the decision, if implemented immediately, will have on the IRS and those who would typically claim an exemption under § 107(2), a stay pending appeal is warranted.

### III.    SECTION 107(1) IS SEVERABLE AND SHOULD REMAIN IN EFFECT.

When a court finds part of a statutory scheme unconstitutional, it must evaluate whether the remaining parts are severable.[1] Courts should "ordinarily give effect to the valid portion of a partially unconstitutional statute so long as it remains fully operative as a law, and so long as it is not evident from the statutory text and context that Congress would have preferred no statute at all." *Executive Benefits Insurance Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014) (internal quotations and citations omitted). Because "[t]he unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions," the "normal rule" is "that partial, rather than facial, invalidation is the required course." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (internal quotations and citations omitted). The severability inquiry is "essentially an inquiry into legislative intent." *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999).

The Internal Revenue Code includes a severability clause confirming that the Court should go no further. That clause specifies that "[i]f any provision of this title, or the application

---

[1]    Plaintiffs initially challenged § 107(1), which excludes from a minister's gross income "the rental value of a home furnished to [the minister] as part of his compensation," but the Court dismissed that part of the lawsuit for lack of standing. (ECF No. 15.) (*See also* ECF No. 87 at 22 ("§ 107(1) (which relates to church-provided housing) is not at issue in this case"); *id.* at 28 ("I do not consider whether § 107(1) violates the establishment clause and I will assume that defendants are correct in asserting that the purpose of § 107(1) was simply to insure that ministers received an exemption that secular employees already had.").)

thereof to any person or circumstances, is held invalid, the remainder of the title, and the application of such provision to other persons or circumstances, shall not be affected thereby." 26 U.S.C. § 7852(a). "Because Congress revealed its intent to make the provisions of" the Internal Revenue Code severable, the plaintiffs "must present 'strong evidence' that Congress would never have intended to enact" § 107(1) "at all" if it could not have included the later provision permitting ministers to exclude certain rental allowances. *Pittston Co. v. United States*, 368 F.3d 385, 400 (4th Cir. 2004).

There is no clear evidence of legislative intent to overcome the presumption that § 107(1) should continue in force despite any declaration that § 107(2) is unconstitutional. On the contrary, the statutory text and context make clear that § 107(1) is severable. Indeed, the precursor to § 107(1) dates back to 1921, when Congress enacted § 213(b)(11), and provided an exclusion for "[t]he rental value of a dwelling house and appurtenances thereof furnished to a minister of the gospel as part of his compensation." Ch. 136, 42 Stat. 227, 239. Although the legislative history of the 1921 Revenue Act does not explain why the in-kind exclusion was introduced, the treatment of clergy housing under prior law sheds light on § 213(b)(11)'s purpose. Immediately before its enactment, the Treasury Department had allowed some employees — but not clergy — to exclude the value of employer-provided housing from income pursuant to the "convenience of the employer" doctrine. *See Commissioner v. Kowalski*, 434 U.S. 77, 84-90 (1977) (describing history of exclusion for such employer-provided housing). Those benefiting included seamen living aboard ships, workers living in "camps," cannery workers, and hospital employees. *Id.* In 1921, the Treasury announced that ministers would be taxed on the fair rental value of parsonages provided as living quarters, O.D. 862, 4 C.B. 85 (1921), even though ministers traditionally resided in parsonages for the church's

convenience (ECF No. 44, ¶¶ 18-57).  Shortly thereafter, Congress changed that treatment by enacting § 213(b)(11), thereby placing ministers on an equal footing with other employees who already enjoyed an exclusion for housing provided for the employer's convenience.

The language of § 213(b)(11) was carried forward in successive revenue acts and was incorporated into the Internal Revenue Code of 1939 without substantive change.  *See* Report of the Joint Committee on Internal Revenue Taxation, Vol. I at 7 (1927); Revenue Act of 1928, Pub. L. No. 562, ch. 852, § 22(b)(8), 45 Stat. 791, 798; Revenue Act of 1932, Pub. L. No. 154, ch. 209, § 22(b)(6), 47 Stat. 169, 179; Internal Revenue Code of 1939, Pub. L. No. 1, 53 Stat. 1, 10.  Finally, when § 107 came into the Code in its present form in 1954, Congress added § 107(2), which allowed ministers to exclude certain "rental allowance[s]." Pub. L. No. 591, ch. 736, sec. 107, 68A Stat. 3, 32.  Later, in 2002, when Congress amended §107(2), it explained that § 107 also served the purpose of avoiding entanglement problems.  The Clergy Housing Allowance Clarification Act, H.R. 4156, 107th Cong. § 2(a)(5) (as introduced April 10, 2002), provides that, in addition to preventing discrimination, § 107 was also designed to avoid "intrusive inquiries by the government into the relationship between clergy and their respective churches" entailed by the generally available convenience-of-the-employer doctrine codified elsewhere in the Code.

There is no question that § 107(1) is "fully operative as a law" even if § 107(2) is declared unconstitutional.  Congress enacted the precursor to § 107(1) to extend the nascent "convenience-of-the-employer doctrine" to ministers some 30 years before the enactment of § 107(2).  Invalidation of § 107(2) does not affect the continued application of § 107(1) within the framework of items specifically excluded from gross income under the internal revenue laws.  The Court should thus conclude that § 107(1) is severable.

Dated: October 30, 2017

Respectfully submitted,

DAVID A. HUBBERT
Acting Assistant Attorney General

/s/ *Erin Healy Gallagher*
ERIN HEALY GALLAGHER
District of Columbia Bar Number: 985670
U.S. Department of Justice
Tax Division
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 353-2452
Facsimile: (202) 514-6770
E-mail: erin.healygallagher@usdoj.gov

/s/ *Richard G. Rose*
RICHARD G. ROSE
District of Columbia Bar Number: 493454
U.S. Department of Justice
Tax Division
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 616-2032
Facsimile: (202) 514-6770
E-mail: richard.g.rose@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that, on October 30, 2017, service of the foregoing DEFENDANTS' SUPPLEMENTAL BRIEF REGARING REMEDIES was made upon all parties by filing it with the Clerk of Court using the CM/ECF system.

*/s/ Richard G. Rose*
RICHARD G. ROSE