UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

ANNIE LAURIE GAYLOR;
DAN BARKER; IAN GAYLOR, PERSONAL
REPRESENTATIVE OF THE ESTATE OF
ANNE NICOL GAYLOR; and FREEDOM FROM
RELIGION FOUNDATION, INC.;

        Plaintiffs,

v.        Case No. 16-cv-215-bbc

STEVEN MNUCHIN, Secretary of the United States
Department of Treasury; JOHN KOSKINEN,
Commissioner of the Internal Revenue Service;
and the UNITED STATES OF AMERICA,

        Defendants,

and

EDWARD PEECHER; CHICAGO EMBASSY
CHURCH; PATRICK MALONE; HOLY CROSS
ANGLICAN CHURCH; and the DIOCESE OF CHICAGO
AND MID-AMERICA OF THE RUSSIAN ORTHODOX
CHURCH OUTSIDE OF RUSSIA,

        Intervenor- Defendants.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF REGARDING REMEDIES**

**I.    THE INTERVENOR-DEFENDANTS ARGUE INCORRECTLY THAT NO CONSEQUENCE SHOULD ATTACH TO THE UNCONSTITUTIONALITY OF § 107(2) OF THE REVENUE CODE.**

The Intervenor-Defendants oppose any substantial remedial order resulting from the unconstitutionality of § 107(2) of Revenue Code. The Intervenors specifically oppose any injunctive relief that would potentially impose sanctions or otherwise have coercive effect. Instead, the Intervenors argue that declaratory relief is sufficient, without more, because it will

leave the government free to apply the statute and protect the interests of pastors. (Intervenors' Supplemental Brief at 4.) The Intervenors further argue that a declaratory judgment will "not upset the status quo," because a declaratory judgment is said to be a "milder alternative to the injunction remedy." (Intervenors' Supplemental Brief at 3.)

Despite arguing for a final judgment with no remedial component, the Intervenors claim that a declaratory judgment is sufficient because the government is presumed to adhere to the law as declared by the court. (Intervenors' Supplemental Brief at 8.) According to the Intervenors, a declaratory judgment is the practical equivalent of specific relief such as injunction or mandamus. (Intervenors' Supplemental Brief at 6.) Contrary to the Intervenors' lip service, however, they go on to argue that the court should not order any relief that either extends or nullifies § 107(2).

In arguing against both extension and nullification, the Intervenors contend that the court's decision should have no prospective effect whatsoever. Their argument that the court's judgment should be toothless, however, is not supported by law or logic. Without specifying either extension or nullification, for example, the Government cannot know how "to adhere to the law as declared by the court," and a declaratory judgment without such detail does not constitute "the practical equivalent of relief by injunction or mandamus." If the court does not include such "detail," then the government cannot know how to proceed -- which is apparently the outcome that the Intervenors seek. Thus, they argue that the court should not make any choice between extension or nullification, presumably so as to leave the government free to apply the statute and protect the exclusive tax benefit for pastors. By contrast, the Plaintiffs contend that the decision of the court should be more than merely hortatory.

Whether the court orders injunctive relief in addition to declaratory relief, a decision must be made between extension and nullification of § 107(2). The alternatives available to the court

in the case of a constitutionality underinclusive statute are extension and nullification, as the Supreme Court reiterated recently in *Sessions v. Morales - Santana*, 137 S.Ct. 1678, 1698 (2017):

> There are 'two remedial alternatives,' our decisions instruct, *Westcott*, 443 U.S., at 89, 99 S.Ct. 2655 (quoting *Welsh v. United States*, 398 U.S. 333, 361, 90 S.Ct. 1792, 26 L.Ed. 308 (1970) (Harlan, J., concurring in result)), when a statute benefits one class (in this case, unwed mothers and their children), as §1409(c) does, and excludes another from the benefit (here, unwed fathers and their children). 'A court may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion.' *Westcott*, 443 U. S., at 89, 99 S.Ct. 2655 (quoting *Welsh*, 398 U.S., at 361, 90 S.Ct. 1792 (opinion of Harlan, J.)). 'When the 'right invoked is that to equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class.' *Heckler v. Mathews*, 465 U.S. 728, 740, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984) (quoting *Iowa-Des Moines Nat. Bank v. Bennett*, 284 U.S. 239, 247, 52 S.Ct. 133, 76 L.Ed. 265 (1931).

Here, whether by declaratory judgment, by injunctive relief, or both, the Plaintiffs, as well as the Government Defendants, agree that this court needs must decide between extension or nullification.

The Intervenors rely on authority that does not support their argument that the court should render an advisory opinion without any force or effect. For instance, in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 155 (1963), the Supreme Court only held that the special and extraordinary procedure of a three-judge court was not necessitated because the matter at issue was on appeal, during which time no immediate coercive changes were demanded. Similarly, in *Taxation With Representation v. Regan*, 676 F.2d 715, 743-44 (D.C. Ct. 1982), the Court of Appeals recognized that extension and nullification are both possible remedies in the case of an underinclusive statute. In that case, moreover, the Court of Appeals indicated that the nullification "remedy appears the most logical and most in accordance with the judgments expressed by Congress." *Id*. at 743. On the other hand, the Court of Appeals felt that the choice,

3

in the first instance, should be made by the district court, rather than at the appellate level. The Court of Appeals, therefore, remanded the case to the district court "with the instruction that it [the district court] cure the constitutionally invalid operation" of the statute at issue after considering the arguments of interested parties. *Id*. at 744.

Far from supporting the Intervenors' abdication arguments, therefore, the relevant authorities recognize that this court should make a decision, even as part of a declaratory judgment, regarding remedial alternatives. For their part, the Intervenors simply misread authorities they cite. For example, the Intervenors site *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Regulation of Fla.*, 496 U.S. 18 (1990), for the proposition that the court should simply leave all decisions regarding prospective remedies to the IRS. In fact, however, the Supreme Court recognized in *McKesson* that "it is undisputed that the Florida Supreme Court, after holding that the Liquor Tax unconstitutionally discriminated against interstate commerce because of its preferences for liquor made from 'crops which Florida is adapted to growing,' 524 So.2d, at 1008, acted correctly in awarding petitioner declaratory and injunctive relief against continued enforcement of the discriminatory provisions." *Id.* at 31. The question of prospective remedy, therefore, was not at issue in *McKesson*, recognizing that the "the trial court had enjoined future enforcement of the preferential rate reductions, leaving all distributors subject to the Liquor Tax's nonpreferred rates." *Id.* at 25.

Likewise, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), does not stand for the proposition that the choice of remedy for an unconstitutional statute should be left to the Defendants. In *Wilton*, the question was whether or not the district court properly exercised its discretion in refusing to entertain a declaratory judgment action at all. In that case, the Supreme Court stated that "in the declaratory judgment context, the normal principle that federal courts

4

should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. In the present case, however, the Plaintiffs filed an appeal from a denial of their refund application, not involving a pre-enforcement situation, and the court did not otherwise decline to adjudicate Plaintiffs' claims, unlike in *Wilton*.

Having already ruled on the merits in this case, nullification is considered the most appropriate remedy. Section 107(2) constitutes an exception to the general rule of taxation, such that extension would have the effect of making the exception the general rule. As the Supreme Court noted in *Sessions*, 137 S.Ct. at 1700, however, the court should "measure the intensity of commitment to the residual policy -- the main rule, not the exception -- and consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation." Applying this test, the residual interest, *i.e.*, the main rule being taxation rather than exemption, suggests that extension would not be the avenue that Congress would adopt.

Accordingly, whether by declaratory judgment alone or in combination with injunctive relief, the court should prospectively nullify § 107(2). The Intervenors' request for a decision that does not "upset the status quo," while "leaving the government free to apply the statute [§ 107(2)] and protect the benefit for pastors," should be rejected. To the contrary, the Intervenors' insinuation that the court's decision be ignored suggests, if anything, the very need for injunctive relief. *See Samuel L. Bray,* The Myth of the Mild Declaratory Judgment, 63 Duke Law Journal 1091 (2014).

## II. THE PLAINTIFFS DO NOT OPPOSE A STAY OF THE COURT'S JUDGMENT PENDING APPEAL.

The Government Defendants and the Intervenor Defendants both request that the court stay its decision pending appeal. The Plaintiffs do not oppose the request.

The Government Defendants and the Intervenor Defendants also request that the court's judgment, including the remedy of nullification, be given only prospective effect.  The Plaintiffs, again, do not oppose this request.

The Intervenors also request that the court's judgment be delayed for 180 days after the expiration of all appeals, which request the Plaintiffs oppose.  The Intervenors argue that such a delay is necessary in order to permit orderly implementation, as well as to allow Congress an opportunity to take action.   The Plaintiffs oppose this request, in part, because Congress will have more than a year to assess the situation before appeals are exhausted, during which time the court's judgment will presumably be stayed.   The Intervenors and other religious officials also will have a similar period of time to contemplate and plan for implementation of the court's decision.   The Plaintiffs note, moreover, that Congress considered no "fix" after this court's prior decision, while on appeal, suggesting a certain Congressional disinterest that continues to this day.

Finally, the Intervenors suggest that the court remand to the IRS to rule on the Plaintiffs' refund application.  The Government Defendants, however, have never disputed the Plaintiffs' calculation or entitlement, except on the legal basis now decided by the court.   Remand to the IRS is unnecessary.

### III.  CONCLUSION.

For all of the above reasons, as well as those stated in Plaintiffs' Supplemental Brief Regarding Remedies, the Plaintiffs request the court to:   (1) Enter judgment declaring § 107(2) to be unconstitutional; (2) prospectively nullifying § 107(2); (3) ordering the Internal Revenue Service to make retroactive payment for the amount of the Plaintiffs' refund applications, which amounts have not been disputed by the Defendants; (4) staying the court's judgment pending appeal; and (5) awarding the Plaintiffs' their costs and disbursements of this action.

Dated this 8th day of November, 2017.

        BOARDMAN & CLARK LLP
        By

         */s/ Richard L. Bolton*
        Richard L. Bolton
        Wisconsin State Bar No. 1012552
        1 South Pinckney Street, Suite 410
        P. O. Box 927
        Madison, WI 53701-0927
        Telephone:   (608) 257-9521
        Facsimile:   (608) 283-1709
        Attorneys for Plaintiffs

<u>Notice of Electronic Filing and Service</u>

      I hereby certify that on November 8, 2017, this document was filed electronically in accordance with the ECF procedures of the United States District Court, Western District of Wisconsin, under Rule 5(d)(1), Federal Rules of Civil Procedure.   All parties who are represented and have consented to service of electronically filed documents are served upon receipt of the NEF from the electronic filing system.

      To the best of my knowledge, there are no parties in this case that require service by means other than electronic service using the Court's NEF.   The original document on file contains a valid original signature.

f:\docs\wd\26318\25\a2941961.docx