## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

ANNIE LAURIE GAYLOR; DAN
BARKER; IAN GAYLOR, Personal
Representative of the estate of ANNE
NICOL GAYLOR; AND FREEDOM
FROM RELIGION FOUNDATION,
INC.,

      *Plaintiffs*,

   v.

JACOB LEW, Secretary of the United
States Department of Treasury; JOHN
KOSKINEN, Commissioner of the
Internal Revenue Service; and the
UNITED STATES OF AMERICA,

      *Defendants*,

and

EDWARD PEECHER, CHRIS
BUTLER, CHICAGO EMBASSY
CHURCH, PATRICK MALONE, HOLY
CROSS ANGLICAN CHURCH, AND
THE DIOCESE OF CHICAGO AND
MID-AMERICA OF THE RUSSIAN
ORTHODOX CHURCH OUTSIDE OF
RUSSIA,

      *Intervenor-Defendants*.

Case No. 16-CV-215

## INTERVENOR-DEFENDANTS' RESPONSE BRIEF REGARDING
## REMEDIES

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................... 1

I.   Declaratory relief followed by a remand to the
     IRS is the best remedy ............................................................ 2

II.  An injunction would harm thousands of ministers
     and would therefore be contrary to congressional
     intent ........................................................................................ 5

III. Prospective-only relief is justified........................................... 6

IV.  The parties agree that Section 107(1) should not be
     invalidated and that the Court should enter a stay.............. 9

CONCLUSION ........................................................................................ 10

## INTRODUCTION

The remedy that the Court has already adopted and the relief that Intervenor-Defendants recommend—a declaratory judgment followed by a remand to the agency—is the only suitable remedy this Court should enter and is designed to maximize flexibility and minimize harm. By contrast, Plaintiffs and Defendants ignore the significant financial harm that an injunction preventing application of Section 107(2) would impose on thousands of ministers across the country. Congress expressly chose to exempt ministers from taxation on their housing allowances, and could not have intended for an unexpected and sudden increase in tax burden for such ministers. Therefore, prospective-only relief is appropriate and would ameliorate the harm to ministers that have relied on the protection afforded by Section 107(2).

If the Court chooses to impose an injunction, then Defendants and Intervenor-Defendants agree on two things. First, we agree that whatever remedy the Court adopts, it should not invalidate the in-kind parsonage allowance found in Section 107(1). Second, the Court should issue a stay pending appeal to include a period of 180 days after the

termination of all appeals (including an appeal to the U.S. Supreme
Court).

## I.  Declaratory relief followed by a remand to the IRS is the best remedy.

Giving the IRS or Congress an opportunity to respond to the Court's
ruling is most consistent with congressional intent. All parties agree that
it would be difficult to know exactly what Congress would have done had
it been apprised that Section 107(2) would be invalidated. Dkt. 88 at 5
(observing that there were "numerous options . . . available to
Congress"); Dkt. 89 at 2 ("[I]t is not clear precisely what Congress would
have done had it known Section 107(2) would be declared
unconstitutional."); Dkt. 91 at 4-5 (acknowledging that there were "a
number of alternative exemptions" that Congress could have enacted).
But that should not lead the Court to enjoin operation of Section 107(2)
as Plaintiffs and Defendants suggest. The availability of numerous
alternatives tells us little about what choice Congress would have made,
let alone that it would have preferred invalidation.

To the contrary, what is clearest—based on Congress's decision to
enact Sections 107(1) and 107(2) in the first place—is that Congress
wanted to reduce entanglement and discrimination and would not have

wanted ministers to face a potentially crippling sudden tax increase. So, any solution that the Court adopts should seek to minimize the disruption that an unexpected tax liability would cause. Congress's "intensity of commitment" to the principles of nonentanglement and nondiscrimination cautions against abrogating Section 107(2). *Heckler v. Mathews*, 465 U.S. 728, 739 n.5 (1984). *See also Moritz v. C. I. R.*, 469 F.2d 466, 470 n.5 (10th Cir. 1972) (noting that expansion of an exemption was "preferable to the disruption which the invalidation of the entire section on such deductions would bring about").

Allowing the IRS and Congress the opportunity to adapt Section 107(2) to the Court's ruling is also most compatible with the balance that Congress struck between maximizing tax revenue and ensuring evenhanded treatment of religious organizations and ministers. Plaintiffs argue that since enjoining Section 107(2) would increase tax revenue, it is the only result consistent with the purpose of the tax code. Dkt. 88 at 4. But the tax code is not single-mindedly directed towards maximizing revenue. If that were true, then exemptions such as the parsonage allowance would not have existed in the first place. Congress provides exemptions that cut against the general purpose of maximizing

revenue for the same sorts of reasons that states have long provided exemptions from property taxes—to reduce entanglement and discrimination, and to guarantee that "entities that exist in a harmonious relationship to the community at large, and that foster its moral or mental improvement, should not be inhibited in their activities" or face the "loss of [their] properties for nonpayment of taxes." *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 672 (1970) (internal quotation marks omitted). Even before the Founding era, religious organizations and their ministers were exempted from certain types of taxation due to "the latent dangers inherent" in certain types of taxation. *Id.* at 673. As Chief Justice Marshall famously noted, the "power to tax involves, necessarily, a power to destroy." *M'Culloch v. Maryland*, 17 U.S. 316, 327 (1819). In enacting Section 107, Congress declared that the goals of nondiscrimination, nonentanglement, and protecting religious leaders from burdensome taxation were weightier than the general goal of maximizing revenue. Only Intervenor-Defendants' proposed remedy honors the balance that Congress struck between maximizing revenue and furthering these goals.

4

## II.    An injunction would harm thousands of ministers and would therefore be contrary to congressional intent.

Neither Plaintiffs nor Defendants so much as mention the thousands of ministers that will be adversely impacted by an injunction. Rather, Plaintiffs and Defendants present an injunction as the only solution and the consequences are minimized or glossed over entirely. Plaintiffs and Defendants both ignore the possibility of an alternative that could eliminate what the Court has held to be unconstitutional inequality while still protecting ministers that have relied on Section 107(2). Fortunately, the Court need not choose between deprivation to ministers or the loss of millions in tax revenue.

Plaintiffs and Defendants argue that since tax exemptions should be interpreted narrowly by courts, an injunction striking down Section 107(2) is the only solution. Dkt. 88 at 4, Dkt. 91 at 4. That argument is shortsighted. The judiciary is poorly situated to fix the constitutional deficiency—on that all parties agree. But the judiciary's circumscribed role in crafting tax relief only underscores the need for the Treasury Department to have an opportunity to react to the Court's declaratory judgment and to enact any necessary interpretive regulations. Congress has delegated to the Treasury Department the authority to provide

5

authoritative interpretations of the tax code. Thus, when the Treasury Department acts to "fill[] gaps in the Internal Revenue Code," its "interpretive choices" are entitled to deference. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 56 (2011). Under Section 107, there is room for the Treasury Department to offer a well-reasoned interpretation that continues to extend tax benefits to ministers like Intervenor-Defendants while addressing the Court's concern over favoritism for religion. Therefore, rather than being forced to adopt a constricted reading of Section 107(2), the Court can provide the agency that has been empowered to interpret Section 107(2) the opportunity to interpret it. A declaratory judgment and a remand gives the Treasury Department or Congress the flexibility to seek feedback and consider what the best reading of Section 107(2) might be in light of this Court's declaratory judgment, while both protecting the flow of tax-revenue and avoiding further injury to ministers that have relied on Section 107(2).

## III.   **Prospective-only relief is justified.**

Plaintiffs claim that the Court must authorize backward-looking relief, citing *McKesson Corp v. Division of Alcoholic Beverages and*

*Tobacco*, 496 U.S. 18 (1990). Dkt. 88 at 6. But *McKesson* does not forbid prospective-only relief.

Instead, *McKesson* stands for two important points. First, prospective-only relief may be appropriate when granting retrospective relief would cause severe "economic and administrative dislocation." *McKesson,* 496 U.S. at 49-50. The Court acknowledged that such "interests traditionally have played, and may play, some role in shaping the contours of the relief that the State must provide to illegally or erroneously deprived taxpayers." *Id.* at 50. In *McKesson*, far from denying the possibility of prospective-only relief, the Court made clear that "equitable considerations" play a role and recognized that "economic and administrative dislocation" could, in appropriate circumstances, support the prospective-only application of relief. *Id.* at 44, 49-50.

Second, prospective-only relief is appropriate when granting retrospective relief would harm *innocent* parties who relied on the law in good faith. In *McKesson*, the state enacted the statute in question even though it closely resembled another one that had been invalidated by the Supreme Court just a few years prior. *Id.* at 46. Additionally, the State had failed to take precautions "to reduce its ultimate exposure for the

unconstitutional tax" which "weaken[ed] any 'equitable' justification" for prospective only relief. *Id.* at 50, 45.

In this case, prospective-only relief is appropriate because not only will retroactive application cause "economic and administrative dislocation" to the government, but also to thousands of ministers who have reasonably relied on Section 107(2). Here, retrospective invalidation of the exemption "threatens to impinge upon the expectations of innocent parties." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 375 (1977). And here, unlike in *McKesson*, ministers reasonably relied on a law that had been on the books with minimal controversy for over sixty years. Accordingly, this case is significantly distinct from *McKesson* and prospective-only relief is proper.

As Defendants correctly note, "equitable principles . . . require that an injunction 'be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" Dkt. 91 at 5 (quoting *Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753, 765 (1994)). Here, that entails prospective-only relief.

## IV.  The parties agree that Section 107(1) should not be invalidated and that the Court should enter a stay.

Both Defendants and Intervenor-Defendants agree that whatever remedy the Court adopts, it should not invalidate the in-kind parsonage allowance found in Section 107(1). Defendants and Intervenor-Defendants also agree that the Court should issue a stay pending appeal to include a period of 180 days after the termination of all appeals (including an appeal to the U.S. Supreme Court).

Plaintiffs are silent on both of those matters, even though the Court expressly urged the parties to address them in their supplemental briefs. Dkt. 87 at 47 (asking the parties to address "whether relief should be stayed pending a potential appeal"); *id.* at 45 (expressing its position that invalidating Section 107(1) would "stretch the limits of judicial power"). In light of the Court's request to brief those issues, Plaintiffs' failure to respond to the Court's invitation was "clearly a strategic decision rather than a mere oversight," *United States v. Montez*, 858 F.3d 1085, 1091 (7th Cir. 2017) (citation omitted), and Plaintiffs' silence "suggest[s] not only a failure to argue the issues but a deliberate concession of [the] issue[s]." *Studio & Partners, s.r.l. v. KI*, No. 06-C-0628, 2008 WL 426496, at *7 (E.D. Wis. Feb. 14, 2008).

Accordingly, the Court should focus solely on Section 107(2), and should grant Defendants' and Intervenor-Defendants' request for a stay for the length of the appeal and for 180 days after termination of all appeals.

## CONCLUSION

A declaratory judgment with remand to the agency is the appropriate form of relief. If the Court goes beyond that, any further relief should be prospective only and should be stayed until 180 days after the expiration of all appeals.

Dated: November 8, 2017          Respectfully submitted,


                                 /s/ Hannah C. Smith
                                 Hannah C. Smith
                                 Luke W. Goodrich
                                 Daniel Ortner*
                                 The Becket Fund for Religious Liberty
                                 1200 New Hampshire Ave. NW
                                 Suite 700
                                 Washington, DC 20036
                                 Email: hsmith@becketlaw.org
                                 Telephone: (202) 955-0095
                                 Facsimile: (202) 955-0090

                                 *Counsel for Intervenor-Defendants*

                                 *Admitted in Virginia, but not in D.C.
                                 Supervised by Ms. Smith and Mr.
                                 Goodrich, members of the D.C. Bar.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2017, the foregoing memorandum was served on all parties via ECF.

/s/ Hannah C. Smith
Hannah C. Smith
Luke W. Goodrich
Daniel Ortner
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, DC 20036
Email: hsmith@becketlaw.org
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Intervenor-Defendants*